CASE 72—PETITION ORDINARY—JANUARY 17.

# Lou. & Nash. R. R. Co. v. Coleman's Adm'r.

### APPEAL FROM WARREN CIRCUIT COURT.

RAILROADS—DUTY TO TRESPASSERS.—While a railroad company is under no legal obligation to look out for trespassers on its track, nor to anticipate their presence there, yet when servants of the company, in charge of a train, discover that a trespasser on the track has placed himself in peril, it is their duty to use all reasonable means at their command to save his life, and the company is liable for their failure to do so.

In this case the engineer of a train on the main track, seeing the danger of a trespasser on the side-track by reason of the approach of a detached flat car, blew his alarm whistle and called to the man on the side-track in a loud voice to get off the track, but his warning was not heeded. Thereupon the conductor, who was on the rear end of the detached car, standing at the brake, ran to the front end of the car and called in a loud voice to the man to get off the track, but the deceased failing to heed the call, which he doubtless did not hear by reason of the noise at the time, was struck by the car before the conductor could get back to the brake, and died from the injuries received. *Held*—That there was sufficient evidence to justify the jury in concluding that the conductor was guilty of ordinary negligence in not at once putting on the brakes when he saw that the deceased did not heed the engineer's warning.

JAMES A. MITCHELL, H. W. BRUCE AND WM. LINDSAY FOR APPELLANT.

1. A railroad company has the right to the exclusive use of its tracks, and as to trespassers thereon, it is required to use only reasonable and ordinary care to prevent injury after discovering the trespasser; and when one of two means is apparently sufficient to prevent the injury, and is adopted, the company is not responsible for failure to adopt the other means that might have prevented the injury. (83 Ky., 122, Ky. Central R. R. Co. v. Gastineau's Adm'r; 82 Ky., 218, L. & N. R. R. Co. v. Howard's Adm'r; Nichol's Adm'r v. L. & N. R. R. Co., MS Op., January 10, 1888; Pierce on Railroads, 330; Wood on Railways, vol. 2, p. 1267; Rorer on Railroads, vol. 2, p. 1124; Thompson on Negligence, vol. 1, p. 449.)

2. In instructing a jury as to the recovery of compensatory damages they must be instructed as to the elements that enter into compensation (9 Bush, 733, L., C. & L. R. R. Co. v. Case's Adm'r.)

WRIGHT & McELROY and P. F. EDWARDS for appellee.

1. On an issue of negligence, if there is any evidence tending to establish the affirmative, it is improper to give a peremptory instruction. (2 Duvall, 115, L. & N. R. R. Co. v. Collins; 7 Bush, 237, L. & N. R. R. Co. v. Mahoney; 3 Marshall, 384, Jarman v. Howard; 1 Marshall, 170, McPherson v. Heckman; 2 B. M., 129, Rowland v. Hanna; 18 B. M., 99, Early v. Cady; Hardin, 301, Bell v. Rowland; 1 Bush, 109, Shay v. Turnpike Co.)

2. Although one be a trespasser upon a railroad track, the company, on discovering his presence, is bound to use reasonable care to save him from injury. (12 Bush, 46, P. & M. R. R. Co. v. Hoehl; 80 Ky., 85, L. & N. R. R. Co. v. Wolf; 6 Ky. Law Rep., 165, L. & N. R. R. Co. v. Howard.)

3. Under charge of willful neglect, party may recover on proof of ordinary negligence. (6 Ky. Law Rep., 163; L. & N. R. R. Co. v. Howard, 9 Bush, 733.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, P. A. Cook, as the administrator of James Coleman, deceased, filed his petition in the Warren Circuit Court against the appellant, to recover damages for the killing of his intestate.

The appellee alleged, in substance, that the appellant's employes and servants in charge of one of its trains of cars, by their willful and gross negligence, ran one of its freight cars against his intestate, whereby he was injured, from which injury he died in a few hours afterwards. The appellant put in issue the allegations of negligence. The appellant also alleged, in substance, that the appellee's intestate, at the time he received the injury, was a trespasser upon its railroad track, and that the injury received was caused by his own negligence, and not by the negligence of the appellant. The appellee, by his reply, put in issue these affirmative allegations.

There were three jury trials of the case; the first resulted in a hung jury, the second resulted in a verdict for the appellee of forty-five hundred dollars, which verdict, at the instance of the appellant, was set aside by the trial court, and a new trial awarded; the third resulted in a verdict for the appellee of three thousand dollars. The trial court having overruled the appellant's motion for a new trial, the case is here by an appeal.

The most important question to be determined relates to the refusal of the lower court to instruct the jury peremptorily to find for the appellant. This necessitates a review of the evidence; for if the evidence made out no case against the appellant, then its motion should have prevailed; on the other hand, if the evidence did make out a case against the appellant, its motion was properly overruled. We mean by the expression making out a case, that competent evidence went to the jury which tended to show that the appellee's intestate was injured and killed by the willful and gross or ordinary negligence of the appellant.

The facts are that the appellee's intestate was walking on the appellant's railroad track; that while thus walking on the track he came to where the appellant's side-track, which was used for switching its cars, intersected the main track; that the appellant's freight train was just behind the appellee's intestate moving in the same direction; that the engineer sounded the steam whistle the usual distance from this switch, which indicated that the train would stop at the station, which was hard by; that appel-

lee's intestate then quit the main track and continued
to walk between the side and main tracks, the space
between the two tracks being about eight feet. It
is evident that he was induced to quit the main
track and walk between the two tracks by the sound-
ing of the whistle, which indicated that the train
would stop at the station, and by so doing he would
be out of its way. This conclusion is fortified by
the fact that the side-track at the intersection, at
the time the intestate reached it, was not closed
with the main track so as to allow the train to pass
upon it. The appellant, while the train was moving,
and before it reached the switch, disconnected a flat
car from the train, and then the engine continued
to move on the main track until it passed the place
where the side-track intersected the main track.
The switch was then closed by the brakeman, and
the disconnected flat car moved upon it by its own
momentum. The engine, after it passed the switch in-
tersection with the main track, passed the intestate
while he was walking between the two tracks. The
engineer discovered the intestate's position just be-
fore he passed him, and kept his eye upon him
until after he had passed him. After passing the
intestate, the engineer saw him start diagonally across
the side-track, as if to go clear across it, but in-
stead, he continued his walk on the end of the ties
just outside of the rail. It then occurred to the
engineer that the intestate was in danger from the
flat car that was moving on the side-track, a short
distance behind him. The engineer, for the purpose
of calling the attention of the intestate to his dan-

ger, blew his stock or alarm whistle, but the whistle
was blown after the engine had passed the intestate
on the main track; the blowing of the whistle did
not arrest the attention of the intestate to the ap-
prehended danger.   The engineer then called to him in
a loud voice to get off the track ; but it is evident that
the intestate did not hear the call, for the engineer
was then blowing off steam from the boiler, and the
intestate continued to walk on the end of the ties.
It is also evident that the intestate was misled by
the blowing of the stock or alarm whistle; for this
is intended to alarm stock or persons on the track
ahead of the train, and the intestate's attention was
probably directed that way, instead of to the dan-
ger that threatened him.   It is also evident that the
intestate believed that the whole train was moving
on the main track, and that he changed his walk
from between the two tracks to the outside of the
side-track, in order to be more secure from danger.
The conductor was on the flat car ; he was at the
rear end of the car, and standing by the brake.   He
heard the sound of the alarm whistle, by which his
attention was called to the fact that the intestate
was walking on the end of the ties ; and that neither
the sound of the whistle, nor the shout of the en-
gineer, the conductor hearing the shouts, caused the
intestate to change his course, and that he would be
struck by the flat car if he continued on his course.
But instead of putting on the brake and stopping
the car, the conductor rushed to the front end of
the car and called in a loud voice to the intestate
to get off the track; but the intestate, doubtless not

hearing the call, for there was considerable noise caused by blowing the steam out of the boiler, he continued to walk on the end of the ties. The conductor, seeing this, started back to the brake for the purpose of putting it on, in order to stop the car; but before he could accomplish this the intestate was struck by the car, and he died from the injury received in about thirty hours afterwards. The proof is clear that had the conductor, upon hearing the alarm whistle and hearing the shout of the engineer, and seeing that the intestate did not quit the track, but continued his course upon it, put on the brake, the car would have been stopped in time to save the life of the intestate. This he failed to do. Did this failure amount to ordinary neglect?

It seems to us that a conductor of ordinary experience and observation could have readily taken in the situation. First. That the intestate had reasonable ground to believe, from the fact that the switch at the intersection was not connected with the main track, that the train would continue on the main track, and that he left the main track in order to be out of danger. Second. That his back being toward the train, and seeing the engine pass him on the main track, he believed that it was drawing the whole train, and he was therefore out of its way. Third. The blowing of the stock or alarm whistle, after the engine had passed him on the main track, would cause him to look ahead of him instead of behind him for danger. Fourth. Seeing that neither the sounding of the whistle nor the shout of the engineer caused the intestate to change his course, the conductor should, as a reason-

vol. 86—36

able man, have inferred that the intestate misconstrued the sounding of the whistle, and did not hear the shout of the conductor, or that, if he did hear the shout, he misunderstood it. It seems to us, therefore, that the conductor, as a man of ordinary prudence and experience, should not have trusted to the experiment of repeating the shouting, because both the sounding of the whistle and the previous shouting had failed to accomplish the desired end, but should have resorted to the sure and safe means, which was at hand, of preventing the injury, by putting on the brake and stopping the car. For it is well settled by this court, that although the intestate, by being on the appellant's track at that particular place, was a trespasser, and that the appellant was under no legal obligation to look out for him, nor to anticipate his presence upon the track, because it had the right to presume that he would not commit a trespass upon its property, yet, when the appellant discovered that the intestate had placed himself in peril, it was its duty " to use all reasonable means at its command to save his life." (L. & N. R. R. Co. v. Howard's Administrator, 6 Ky. Law Rep., 166.), This doctrine rests upon the broad and high ground that the life of the intestate, although he was a trespasser and negligent, should not be at the mercy of the appellee after his danger was discovered, but it should use all reasonable means at its command to save his life. Such is the regard of human law— the dictate of a noble humanity—for the life of a human being.

The instructions given at the instance of the ap-

pellee and appellant fully set forth the law as above
laid down. They fully and fairly present the ques-
tion of ordinary neglect on the part of the appellant,
and appellee to the jury.

The evidence in the case puts the question of will-
ful negligence out of the case. Therefore, the only
question to be determined by the jury was, whether
or not the appellant used all the means at his com-
mand, after it discovered the intestate's peril, to save
his life. As above stated, the jury was fully and
properly instructed in reference to that matter. We
therefore think that the lower court did right in re-
fusing the appellant's other instructions.

We also think there was sufficient evidence before
the jury to justify them in coming to the conclusion
that the appellant, under the circumstances of this
case, was guilty of negligence in not putting on the
brake and stopping the car, after the peril of the
intestate was discovered by the conductor.

We also think that the objection to the competency
of Cothran's answer to the thirteenth question in his
deposition was properly overruled.

We also think that the interrogatories propounded
to the jury were sufficient to cover all the questions
raised by the pleadings and evidence, and that the
lower court properly rejected the refused ones.

The judgment of the lower court is affirmed.

———

To a petition for rehearing, Judge BENNETT deliv-
ored the following response of the court:

The counsel for the appellant think that the case of

Nichols' Administrator v. The L. & N. R. R. Co., decided by this court January 10, 1888, is in conflict with this case. This is a mistake. In that case the court said that as Nichols was walking on the company's track without right, the engineer had the right to believe that he would look out for his own safety and leave the track in time to avoid a collision with the train, and when the engineer saw that Nichols did not leave the track, and was in danger of being struck by the engine, "he called to him to leave the track and blew the whistle for down brakes; but the car was then so near as to render it impossible to check its progress so as to save the life of the deceased." We thought in that case that the facts of it justified the decision. We still so think.

It was not held in that case that it was the duty of the engineer, after discovering the peril of a trespasser upon the track, to use all the means at his command to avert injuring him. It was not held that, if the engineer saw the peril of Nichols, and that his shouting to him did not arouse him to a sense of his danger, it was not his duty to put down the brakes and stop the train in time to avoid a collision, if he could. In the opinion in this case the doctrine was announced, that upon the conductor's seeing that the shouting to Coleman to leave the track and the blowing of the alarm whistle failed to arouse him to a sense of his peril, it was his duty to put down the brakes, they being at hand, so as to stop the car, if he could, in time to avoid a collision, and not trust to arousing Coleman to a sense of his danger by again shouting, as that resource had failed to ac-

complish the purpose. This doctrine is in harmony with the Nichols case and is sound law, and is supported by the weight of authority.

The petition for a rehearing is overruled.