JOSEPH J. O'LEARY *vs.* BROOKS ELEVATOR COMPANY.

Opinion filed May 27th, 1898.

**Negligence—Use of Private Premises.**

Every man has the absolute right to use his own property for any of the purposes to which such property is usually applied, and in such manner as he sees proper, provided he exercises proper care and skill to avoid unnecessary injury to others up to the point where such use becomes a nuisance.

### Trespassing Children.

A landowner owes no duty of protection to a trespasser upon his land when such trespass is unknown to the landowner, and where it is in no manner induced by any negligence on his part.

### Negligence Defined.

Actionable negligence is a failure to observe a legal duty existing in favor of the person bringing the action. Where there is no duty, there can be no actionable negligence.

### Child Responsible for Its Own Torts.

A child is responsible for its own torts although committed by the direction of another; and a child is no less a trespasser because the trespass was committed under the control or coercion of a parent or guardian.

Appeal from District Court, Traill County; *Pollock*, J.

Action by Joseph J. O'Leary, by J. D. O'Leary, his guardian, against the Brooks Elevator Company. From a judgment entered on a verdict directed for defendant, plaintiff appeals.

Affirmed.

*Carmody & Leslie*, and *J. P. Galbraith*, for appellant.

The claim that a man can do as he pleases on or within his own premises is not correct. A technical trespass by plaintiff does not bar a recovery. *Fisher* v. *Clark*, 41 Barb. 329; *Radcliffe* v. *Mayor*, 4 N. Y. 195, 53 Am. Dec. 357; *Brinkley Car Works, etc. Co.* v. *Cooper*, 31 S. W. Rep. 154; *Railroad* v. *Stoupe*, 21 L. Ed. 745; *Keffee* v. *Ry. Co.*, 21 Minn. 207; *Nagel* v. *Ry.*, 75 Mo. 652; *O'Malley* v. *Ry.*, 45 N. W. Rep. 441; *Union Pac. R. Co.* v. *McDonald*, 152 U. S. 212, 14 S. E. Rep. 619; *Hydraulic Works Co.* v. *Orr*, 83 Pa. St. 332; *Powers* v. *Harlow*, 19 N. W. Rep. 257; *Harriman* v. *Ry. Co.*, 12 N. E. Rep. 451; *Penso* v. *McCormick*, 25 N. E. Rep. 156; *Kenchlow* v. *Elevator Co.*, 46 Pac. Rep. 703; *Mallay* v. *Society*, 21 Pac. Rep. 525; *Lowe* v. *City*, 44 Pac. Rep. 1050; *Brinkley, etc. Co.* v. *Cooper*, 31 S. W. Rep. 154; *Daily* v. *Ry. Co.*, 68 Am. Dec. 413; *Kansas City Ry. Co.* v. *Fitzsimmons*, 22 Kan. 686, 31 Am. Repts. 203; *Lane* v. *Atlantic Works*, 107 Mass. 104; *Berge* v. *Gardner*, 19 Conn. 507, 50 Am. Dec. 261; *C. B. & Q. Ry. Co.* v. *Grablin*, 56 N. W. Rep. 796. The question of negligence

should have been submitted to the jury. *Kenchlow* v. *Elevator Co.*, 46 Pac. Rep. 703; *Ry. Co.* v. *Rollins*, 5 Kan. 167; *Caulkins* v. *Mathews*, 5 Kan. 191; *Ry. Co.* v. *Richardson*, 47 Kan. 517, 28 Pac. Rep. 183. The exposure of dangerous implements or machinery unguarded and in such a position as to be attractive to trespassing children has frequently been the sole ground of liability for injuries to them. *Ry. Co.* v. *Fitzsimmons*, 22 Kan. 686; *Ry. Co.* v. *Dunden*, 37 Kan. 1, 14 Pac. Rep. 501; *Osage City* v. *Larkin*, 40 Kan. 206, 19 Pac. Rep. 658. And where traps or pitfalls are maintained on one's premises unguarded, and in such position that others are liable to injury, liability follows injury. *Penso* v. *McCormick*, 125 Ind. 116, 25 N. E. Rep. 156; *Bennett* v. *Ry. Co.*, 102 U. S. 577; *Branson* v. *Labrot*, 81 Ky. 638; *Schilling* v. *Abernethy*, 3 At. Rep. 792; *Ry. Co.* v. *McDonald*, 152 U. S. 262, 14 S. C. Rep. 619.

*Swenson & Norman*, (*F. W. Root*, of counsel,) for respondent.

A minor is answerable for a trespass committed by him, although he acts by command of his father. *Scott* v. *Watson*, 46 Me. 362; *Humphrey* v. *Douglas*, 10 Vt. 71; *Kilpatrick* v. *Hall*, 67 Me. 543; *Smith* v. *Kron*, 96 N. C. 392; *Guilbert* v. *Strom*, 23 Car. 1, B. R. 72; *Mitchell* v. *Harmony*, 13 How. U. S. 115. The owner or occupant of premises owes no duty to a trespasser thereon, except to do him no wilful or wanton injury. *City* v. *Emmelman*, 108 Ind. 53, 9 N. E. Rep. 155; Cooley on Torts, 659–660; *Akers* v. *Ry. Co.*, 58 Minn. 544; *Sweeny* v. *Old Colony Ry. Co.*, 92 Mass. 368. The land owner is no more bound to keep his premises safe for children who are trespassers or bare licensees not invited. or enticed by him, than to keep them safe for adults. *Morrisey* v. *Eastern Ry. Co.*, 126 Mass. 377; *Gillespie* v. *McGowan*, 100 Pa. St. 144; *Emerson* v. *Petuler*, 35 Minn. 481; *Ratte* v. *Dawson*, 50 Minn. 450; *B. etc. Ry. Co.* v. *Schwingling*, 101 Pa. St. 258; *Klix* v. *Nieman*, 68 Wis. 271; *Holbrook* v. *Aldrich*, 46 N. E. Rep. 115; *Richards* v. *Connell*, 63 N. W. Rep. 915; *Witte* v. *Stifel*, 28 S. W. Rep. 891; *Murphy* v. *City*, 118 N. Y. 575; *Hargreaves* v. *Deacon*, 25 Mich. 1; *Clark* v. *Manchester*, 62 N. H. 577; *Dobbins* v. *Mo. Ry.*

*Co.,* 41 S. W. Rep. 62; *Daneck* v. *Ry. Co.,* 37 At. Rep. 59; *McEachern* v. *Ry. Co.,* 150 Mass. 515; *Ry. Co.* v. *Edwards,* 36 S. W. Rep. 430; *Trask* v. *Shotwell,* 41 Minn. 66; *Mathews* v. *Bensel,* 51 N. J. L. 30. Plaintiff failed to bring himself within the rule in the turntable cases by failing to prove: 1st. That it was known to defendant that children were in the habit of coming upon the premises to play with or upon the machinery. 2d. That the injured child was upon the premises because attracted there by the very object which caused the injury. *Keffe* v. *Ry. Co.,* 21 Minn. 207; *Nagel* v. *Ry. Co.,* 75 Mo. 652. The doctrine of the turntable cases has been repudiated by leading courts in recent decision. *Daniels* v. *Ry. Co.,* 154 Mass. 349; *Walsh* v. *Ry. Co.,* 145 N. Y. 301; *Frost* v. *Ry. Co.,* 64 N. H. 220; *Ry. Co.* v. *Clark,* 41 Ill. App. 343.

BARTHOLOMEW, J. Action for damages for a personal injury caused by the alleged negligence of defendant. When the evidence was closed, the court, on defendant's motion, directed a verdict in its favor. The facts admitted, and which plaintiff's evidence tended to establish, are as follows: The plaintiff, Joseph J. O'Leary, is a minor, and was 11 years old at the time of the trial, which was in January, 1897. J. D. O'Leary is plaintiff's duly appointed guardian. The defendant is a corporation, and at the time of the injury complained of, and for several years prior thereto, owned and operated a grain elevator at the City of Hillsboro, in this state. The railroad track passes through the city, running north and south. Main street is west of the railroad track, and runs parallel therewith, the east line of the street being identical with the west line of the right of way. Fifth avenue, running east and west, crosses Main street and the railroad track at right angles. The defendant's elevator property stands in the northeast corner formed by the intersection of Main street and Fifth avenue. The building nearest the corner was the engine house. This was a brick building between 8 and 9 feet wide, and 28 feet long, the front end facing west on Main street, but back from the street 8 or 10 feet. North from the north line of the

engine house, 20 feet distant, was the elevator proper. Starting in front of the engine house, and extending to and along the front of the elevator, was an elevated driveway for hauling grain to the elevator. This driveway was not more than 2 feet high where it left the engine house, and raised to about 5 feet in height at the elevator. There was a railing on the driveway, and on the inside or east side it was boarded up from the ground to the driveway, but there were boards off, so a man could pass through. The elevator at the south end was 30 feet wide. The south side of the engine house ran back along the walk on the north side of Fifth avenue. The first side track of the railroad was 8 or 10 feet east of the east end of the engine house. The machinery in the elevator was connected with the engine by means of a shaft or tumbling rod extending across the space between the two buildings about 15 inches from the ground, and 6 or 8 feet from the driveway. About the middle of this shaft was a knuckle connecting two separate pieces of the shaft. This knuckle was bolted over the ends of the shaft, and by means of slots in the knuckle and in the shaft, into which iron wedges were fitted, a solid connection was made. These wedges would sometimes work loose, and, to void that, a wire, about the size of a large fence wire or telegraph wire, had been used to wind around the shaft and the knuckle in such a manner as to hold the wedges in place. The end of this wire was left standing out about six inches from the knuckle. Neither the shaft nor the knuckle was in any manner boxed or covered. When the shaft was in motion, the protruding end of the wire could not be seen, or, if seen at all, only as a dim outline. The shaft had been used by defendant in this uncovered conditioned for a number of years. Just how long the wire had been used does not appear. In the summer time, boys at play sometimes went upon this space between the engine house and the elevator, and over and around this shaft. The object that seems to have been attractive to children was an escape pipe that came out of the engine house a few feet distant fom the shaft. The spot would seem also to have been something

of a resort for tramps, as the evidence shows them to have been there on several occasions. These facts were all known to the defendant.

Late in the evening of July 19, 1896, the plaintiff, in company with one Riordan, reached Hillsboro. This man Riordan was plaintiff's uncle, and was at that time his gurdian. His sight was defective. He could see sufficiently well for all purposes of locomotion, but he represented himself as blind, and was going through the country soliciting charity. Ostensibly, he was cared for by plaintiff, who led him withersoever he went. Plaintiff was completely under Riordan's control. They stopped at an hotel that night, on Main street, and nearly opposite the elevator. The next morning, after breakfast, Riordan directed plaintiff to take him to some box cars that stood on the track, where he would smoke. They crossed over Main street on the north side of Fifth avenue, and followed the sidewalk going east until they had passed beyond the east end of the engine house far enough to permit Riordan to look into the space between the engine house and the elevator. There he saw a ladder lying on its side, and leaning against the boards that extended from the ground up to the driveway. He indicated that he would use that as his smoking place, and accordingly they passed into the space, crossed over the shaft, and sat down on the ladder. As they sat down, Riordan dropped his cane in such a manner that it passed under the shaft. The shaft was in motion, and was revolving about 160 times per minute. After Riordan had finished smoking, he directed plaintiff to get his cane. In endeavoring to get the cane, plaintiff's clothes were caught by the protruding and practically invisible end of the wire, and he was instantly whirled around with the revolving shaft and knuckle. The outcry caused the man in charge of the elevator to stop the engine as speedily as he could. The plaintiff was frightfully injured, but ultimately recovered, with the loss of one leg at the knee. The sole proposition involved in the case is whether or not defendant is liable, under the facts stated, in damages, for the injury to plaintiff.

The precise principles of law that should measure the liability of the landowner to persons injured upon his lands are difficult of ascertainment. This arises in part from the inherent intricacies of the subject, and in a greater degree from the cirumstances that the facts in nearly every case are so clearly differentiated from the facts in every other case that it has not been possible for courts to establish many general rules governing such cases. More particularly has this been true when, as in this case, the injured person was a child; and, as capacity and responsibility on the part of the injured person are elements that always enter into the consideration of contributory negligence, it follows that with children the age and mental development make it still more difficult to establish general rules. In cases of this class, where the defendant has been held liable, the case of *Lynch* v. *Nurdin*, 1 Q. B. 29, is quite generally cited as an authority in favor of a recovery. On the other hand, and in the interests of landowner defendants, it has been urged that this case is not such an authority, because the injury in that case occurred in the public street, where the injured child had a legal right to go. In that case a horse and cart were left unhitched and unattended in the street, and the plaintiff, a lad seven years of age, climbing upon the cart; another boy led the horse away; and the plaintiff, in attempting to get down, was run over and injured. The owner of the horse and cart was held liable, on the ground of negligence in leaving the horse and cart unhitched, and with no person to take care of it, in a street where children were playing. While it is true that plaintiff was not a trespasser by being in the street, yet he was a trespasser when he climbed upon the cart. In *Railroad Co.* v. *Stout*, 17 Wall. 657, the Supreme Court of the United States, in speaking of *Lynch* v. *Nurdin*, say: "The child was clearly a trespasser in climbing upon the cart, but was allowed to recover." We think that case is a clear authority in favor of allowing a technical trespasser to recover by reason of the negligence of defendant. The case of *Railroad Co.* v. *Stout*, *supra*, was the first of a series of cases now known as the "Turn-

table Cases," wherein railroad companies have been held liable for injuries received by children while playing upon or around turntables by reason of the fact that the turntables were left unfastened and unguarded. Among these cases may be mentioned *Keffe* v. *Railroad Co.*, 21 Minn. 207; *O'Malley* v. *Railway Co.*, 43 Minn. 289, 45 N.W. Rep. 440; *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296, 27 Pac. Rep. 666; *Railway Co.* v. *Measles*, 81 Tex. 474, 17 S. W. Rep. 124; *Railway Co.* v. *Fitzsimmons*, 22 Kan. 686; *Railway Co.* v. *Dunden*, 37 Kan. 1, 14 Pac. 501; *Nagel* v. *Railway Co.*, 75 Mo. 653; *Navigation Co.* v. *Hedrick*, 1 Wash. St. 446, 25 Pac. Rep. 335. All of these cases practically, and some of them expressly, treat the plaintiff as a technical trespasser; and they establish the principle that such a trespasser may recover, although there be no willful act or gross negligence on. the part of the defendant. But these cases are *sui generis.* They have for their foundation the assumption that a defendant landowner must know that children will follow their childish instincts and inclinations, and that they are without capacity to clearly discriminate between things that are dangerous and things that are not dangerous; and therefore, if he leave upon his premises a dangerous piece of machinery unguarded and fully exposed, and in a position where it will probably be seen by children, and of a character that would naturally attract and entice children, he must anticipate that children will go around and upon it; and he is therefore bound to use ordinary care to protect these unconscious trespassers from being unnecessarily injured by such dangerous machinery. Nor has the application of this principle been confined to this one line of cases. It was applied in *Birge* v. *Gardner*, 19 Conn. 506, where the injury was produced by a gate; in *Car Co.* v. *Cooper*, 60 Ark. 545, 31 S. W. Rep. 154, where the child was scalded in a pool of hot water; in *Harriman* v. *Railway Co.*, 45 Ohio St. 11, 12 N. E. Rep. 451, where the dangerous object was a signal torpedo; in *Mullaney* v. *Spence*, 15 Abb. Prac. (N. S.) 319, an elevator worked by steam; in *City of Pekin* v. *McMahon*,

154 Ill. 141, 39 N. E. Rep. 484, a deep pit filled with water and
floating materials; in *Powers* v. *Harlow*, 53 Mich. 507, 19 N. W.
Rep. 257, where the injury was caused by a dynamite cartridge,
but there was a question of license in the case also; in *Whirley* v.
*Whiteman*, 1 Head, 610, cog wheels outside of a paper mill, but
operated by a shaft from within; in *Bransom's Adm'r* v. *Labrot*,
81 Ky. 638, lumber pile; in *Mackey* v. *City of Vicksburg*, 64 Miss.
777, 2 South. 178, where the injury was caused by falling into an
excavation made by the city.   Many other cases might be cited,
but these are sufficient to show the wide diversity of facts to
which this principle has been applied.   These cases bear upon
the case under consideration only in the fact that they establish
the principle that a trespasser on land, and who is injured
thereon, may, under some circumstances, recover therefor from
the landowner, on the ground of the negligence of the latter.
But the general ground upon which these recoveries were allowed
exclude this case from the operation of the principle.   In each
case cited, it was held that the landowner placed or created upon
his premises a dangerous object or condition, which was attrac-
tive to children, and which he had reason to believe would attract
children, and which did in fact draw the injured child to it.
While the plaintiff in this case is a child, and doubtless subject
to the instincts and inclinations of children, and while the evi-
dence tends to show that the place where he was injured was
attractive to children, yet it clearly appears that plaintiff was not
in fact attracted to the spot, and was not induced to go there by
reason of his childish instincts and inclinations.   There is another
well recognized line of authority under which a trespasser has
been permitted to recover.   It covers the cases where, after the
trespass is known and the danger perceived, the landowner fails
to use ordinary diligence to protect the trespasser from injury.
See cases cited in note 7, § 1253, Elliott, R. R.; also, *Railroad Co.*
v. *Coleman's Adm'r*, 86 Ky. 556, 6 S. W. Rep. 438, and 8 S. W.
Rep. 875; *Railway Co.* v. *Wood*, 86 Ala. 164, 5 South. 463; *Bost-
wick* v. *Railway Co.*, 2 N. D. 440, 51 N. W. Rep. 781.   But the

facts in this case likewise exclude it from that line of authority. A trespasser may also recover for injuries inflicted upon him by the wanton or willful acts of the defendant. This is elementary. These classes, generally speaking cover all the conditions under which a trespasser, whether knowingly and willfully such or only technically such, is permitted to recover from the land owner.

It is a fundamental principle of law that "the absolute right of every man to use his own property as he pleases for all purposes to which such property is usually applied, provided he exercises proper care and skill to prevent any unnecessary injury to others, is unlimited and unqualified up to the point where the particular use becomes a nuisance." *Fisher* v. *Clark*, 41 Barb. 329. It is equally true that a landowner owes no duty of protection to a trespasser, at least up to the time when the trespass is known. In other words, he is under no legal duty to keep his premises in such condition that they may be trespassed upon with safety to the trespasser, provided their condition does not unnecessarily invite injury. We think that it is under this proviso that the turntable cases and others of that class must be placed where no question of license is involved. They cannot be placed upon the ground of implied invitation because the attractive object that allured the child, and wrought the injury, was not placed on the premises for the purpose of alluring children, but it was placed there or left there, unfastened or unguarded, with knowledge that it would allure children. We are aware that able courts have very recently refused to follow the principle of the turntable cases. *Frost* v. *Railroad*, 64 N. H. 220, 9 Atl. 790; *Daniels* v. *Railroad Co.*, 154 Mass. 349, 28 N. E. Rep. 283; *Walsh* v. *Railroad Co.*, 145 N. Y. 301, 39 N. E. Rep. 1068.

In this case we neither adopt nor reject the principle of the turntable cases, our object being to show that in no event do they apply to the case at bar. But it is urged that in their general scope they do apply to this case; that the shaft and knuckle could have been boxed or covered at small expense; that exposed they were dangerous, as the accident in this case proves; and

that, as children and tramps were attracted to the spot, defendant was bound to anticipate such an accident, and its failure to guard against it was actionable negligence. But actionable negligence is simply a failure to exercise that diligence and skill that was imposed by some legal duty. In *City of Indianapolis* v. *Emmelman*, 108 Ind. 530, 9 N. E. Rep. 155, it is said: "The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed." And Judge Mitchell says, in *Akers* v. *Railway Co.*, 58 Minn. 544, 60 N. W. Rep. 670: "Actionable negligence is a failure to discharge a legal duty to the person injured. If there is no duty, there is no negligence. Even if the defendant owes a duty to some one else, but does not owe it to the person injured, no action will lie. The duty must be due to the person injured." What duty did this defendant owe to this plaintiff? Let us concede (and no decided case has gone so far) that children *non sui juris* were attracted, not by the dangerous machinery, but by the escape pipe, and that defendant knew they were so attracted, and that the proximity of the escape pipe to the knuckle was such as to endanger the safety of children so drawn to the escape pipe, and as to them defendant owed the duty of covering the knuckle; yet such duty extended only to such children as were drawn to or enticed upon the premises by the dangerous attraction that the defendant had placed or suffered thereon. As to persons who went upon the premises solely for their own convenience, and to subserve their own ends and purposes, no such duty could exist. Defendant had no reasonable cause to anticipate or apprehend that its premises would be thus used by trespassers; and, if defendant owed no duty of protection to such persons, no actionable negligence can be predicated upon its failure to furnish such protection.

That the plaintiff was placed in the dangerous situation by one under whose control he was is his misfortune,—and a most deplorable misfortune it is in this case,—but that fact does not change the defendant's legal duty. Children are liable for their

torts even when committed under the express orders of their parents or guardians. *Scott* v. *Watson*, 46 Me. 362; *Kilpatrick* v. *Hall*, 67 Me. 543; *Smith* v. *Kron*, 96 N. C. 392, 2 S. E. Rep. 533; *Chandler* v. *Deaton*, 37 Tex. 406; *Huchting* v. *Engel*, 17 Wis. 230; *School Dist.* v. *Bragdon*, 23 N. H. 507. The directions of Riordan did not make plaintiff less a trespasser. It does not appear, and is not claimed, that his trespass was known to defendant, or that maintaining the shaft and knuckle in the condition in which they were, in the locality in which they were, was an act of wanton or willful negligence, that manifests an indifference to consequences, or disregard for the property or persons of others. The question of contributory negligence does not enter into this case. None can properly be attributed to plaintiff, nor can actionable negligence be attributed to defendant. The plaintiff's misfortune— and it is indeed a sad one—resulted from one of those accidents for which the law can cast the blame upon no one.

Several errors were assigned upon the rulings upon the evidence. The view of the law as herein expressed renders them all immaterial.

The judgment of the District Court is affirmed. All concur.