ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. EVANS.

Opinion delivered March 4, 1905.

RAILROADS—NEGLIGENCE AFTER DISCOVERING TRESPASSER'S PERIL.—Where the employees in charge of a swiftly moving train discovered a trespasser on the track, and had reasonable grounds for believing that he was not aware of the train's approach, and thereafter failed to give him timely warning or to use means to avoid injuring him, but willfully or recklessly ran over him, the railway company is liable for his killing, notwithstanding his contributory negligence.

Appeal from Crawford Circuit Court.

Jeptha H. Evans, Judge.

Affirmed.

STATEMENT BY THE COURT.

Appellees, the widow and children of P. M. Evans, deceased, brought this suit against appellant railway company for damages accruing to them on account of the killing of the said Evans by one of appellant's locomotives on December 23, 1901.

The complaint alleges that Evans was walking along the railroad track when he was run over and killed; that the locomotive was being run at a high and dangerous rate of speed, and that appellant's servants in charge of the locomotive, after discovering him upon the track for a distance of more than three hundred yards ahead, and seeing that he was unconscious of the approach of the locomotive, wrongfully, willfully and negligently failed and refused to give any danger signals or check the speed of the train so as to avoid injuring him, but, on the contrary, willfully, recklessly and wantonly ran the locomotive against him, thereby causing his death.

Appellant, in its answer, specifically denied all the allegations of the complaint, and also pleaded that the death of Evans was caused by his own negligence.

The defendant introduced no testimony, and the testimony of plaintiff's witnesses tended to establish the following state of facts: Evans and several companions visited the incorporated town of Mulberry, in Crawford County, on the day he was killed, and started on their return home about 2 or 3 o'clock in the afternoon. Leaving the business part of town, they came south along Main Street, and went upon the railroad track, where it crosses this street, and turned west on the track, intending to follow the track to the railroad bridge across a small stream called Little Mulberry. Footmen frequently followed that route in order to cross the stream upon the railroad bridge, there being no other bridge at that point. Evans and one of his companions, John Hobb, were walking along the main track, and two others were walking along the sidetrack, all going west, and were about 150

feet west of the Main Street crossing, and about 250 feet west of the Mulberry station when Evans was struck by the locomotive. The train, consisting of a locomotive, tender and caboose only, approached from the east, and ran through town at a high rate of speed without stopping. The witnesses stated · that the whistle was sounded about a fourth of a mile east of the station, but that neither whistle nor bell were heard afterwards. Evans and John Hobb gave no indication that they were apprised of the approach of the train until it was within about fifty feet of them, when one of the party on the sidetrack warned them of the danger by crying, "Look out, boys, train is coming!" at which they quickly attempted to get off the track, and Hobb narrowly made his escape, but Evans was struck by the engine just as he passed off the south side of the track. When the warning cry was given, Evans appeared much excited, so the witnesses say, and first made a motion as if to go to the north side of the track, but changed and went back to the south side, attempting to escape.

At the close of the testimony defendant asked for a peremptory instruction in its favor, which was refused, and other instruction asked by the defendant was also refused.

The court of its own motion gave the following instructions, viz:

"A. If you find from a preponderance of the evidence in this case, either direct or circumstantial, that, in time to have avoided injuring Evans, the operatives of the engine which struck him saw him walking along the track, and knew, or had reasonable grounds for believing, that he was not aware of the approach of the engine and car attached, and so oblivious to his danger, and thereafter failed to give him timely warning, or to use reasonable means to avoid injuring him, but thereafter willfully, or wantonly or recklessly ran the engine and car on to and against him, you will find for the plaintiffs. If the evidence fails to show all these things by preponderance, you will find for the defendant.

"B. If the operatives of the train did not see Evans at all on the track, or if they did see him, but too late to give him warning, or to do anything to avoid injuring him, then in such

case the defendant is not liable; and this, notwithstanding you may find that the train was being operated at a greater rate of speed than was prudent, and that no watchout was kept as required by law, and no bell rung or whistle sounded."

On motion of the defendant the court submitted to the jury special findings of fact, and the jury answered the same as follows:

(1) "Did the deceased know the train was coming in time to get off the track?" Answer: "No."

(2) "Was the deceased able, after he saw the train coming, to get off the track?" Answer: "No."

(3) "When did the engineer first see the deceased?" Answer: "A sufficient distance to avoid injury."

(4) "When could the engineer first have seen the deceased, had he looked?" Answer: "A distance of 300 yards."

The jury returned a verdict for $3,730. The court rendered judgment accordingly, and the defendant appealed.

*Oscar L. Miles,* for appellant.

The proof must show that the injured party was discovered in time to avoid the injury. 36 Ark. 371; 45 Ark. 250; 47 Ark. 497; 49 Ark. 257; 50 Ark. 483; 64 Ark. 364; 69 Ark. 380.

*Sam R. Chew* and *H. L. Fitzhugh,* for appellee.

The employees of the train did not keep the proper lookout. 38 Am. Rep. 67; 55 Am. Dec. 674; 38 Ia. 120; 36 Am. & Eng. R. Cas. 151; Kirby's Dig. § 6607; 69 Ark. 130; 63 Ark. 184. Appellant is liable if the injury could have been avoided by the exercise of ordinary care. 89 Ky. 407; 86 Ala. 164; 37 N. Y. 360; 119 N. Car. 751; 108 Mo. 18; 36 Md. 366; 84 S. W. 1; 69 N. H. 361; 36 Ark. 42, 371; 46 Ark. 513; 48 Ark. 106; 49 Ark. 257; 61 Ark. 341; 65 Ark. 429; 62 Ark. 235; 50 Ark. 482; 66 Ark. 366. The verdict was not excessive. 57 Ark. 306; 60 Ark. 550; 43 Ark. 220; 64 Ark. 238; 62 Ark. 228.

McCulloch, J., (after stating the facts.) We find no error in the instructions given by the court to the jury. They correctly and concisely declared the law applicable to the case.

It is conceded that Evans was guilty of negligence, which contributed to his death, in failing to look and listen for the approaching train, and the case turns solely upon the question whether the agents and servants of. the railway company in charge of the locomotive saw him upon the track in time to have prevented the injury by the exercise of proper precaution, and, seeing him, whether they exercised proper care and precaution to prevent the injury.

The jury, in their special verdict, found that the engineer discovered the deceased ahead of the locomotive a "sufficient distance to avoid injury," and the testimony was sufficient to warrant that finding. The track was clear, no obstructions intervened for a distance of three hundred yards, it was in the day time, and the witnesses saw the engineer and fireman in the engine occupying positions from which they must have plainly observed the men upon the track in front of the approaching train. These facts were not denied, and appellant made no effort to prove to the contrary, though the engineer was present at the trial, and was introduced as a witness by appellee as to his familiarity with the track through the town of Mulberry.

The contributory negligence of a person injured is no defense where the direct cause of the injury complained of is the omission of defendant, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequence thereof. *Little Rock & Ft. S. Ry.* v. *Cavenesse*, 48 Ark. 106. The true rule which runs through the repeated decisions of this court on the subject is stated in *Little Rock & Ft. S. Ry. Co.* v. *Pankhurst*, 36 Ark. 377, as follows: "One who is injured by the mere negligence of another cannot recover at law or equity any compensation for his injury, if he, by his own or by his agent's ordinary negligence or willful wrong, contributed to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him, except where the direct cause of the injury is the omission of the other party, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences of such negligence." *St. Louis, I. M. & S. Ry. Co.* v. *Freeman*, 36 Ark. 46; *Little Rock, M. R. & T. Ry. Co.* v. *Haynes*, 47 Ark. 497; *St. Louis, I. M. & S.*

*Ry. Co.* v. *Monday,* 49 Ark. 257; *St. Louis, I. M. & S. Ry. Co.* v. *Wilkerson,* 46 Ark. 513; *Kansas & A. V. Ry. Co.* v. *Fitzhugh,* 61 Ark. 741

In *St. Louis, I. M. & S. Ry. Co.* v. *Wilkerson, supra,* this court said: "If the employees of a railroad company in charge of its train see a man walking upon its track at a distance ahead sufficient to enable him to get out of the way before the train reaches him, and are not aware that he is deaf or insane, or from some other cause insensible of the danger, or unable to get out of the way, they have a right to rely on human experience, and to presume that he will act upon the principles of common sense and the motive of self-preservation common to mankind in general, and will get out of the way, and to go on without checking the speed of the train until they see he is not likely to get out of the way, when it would become their duty to give extra alarm by bell or whistle; and if that is not heeded, and it becomes apparent that he will not get out of the way, then as a last resort to check its speed, or stop the train, if possible, in time to avoid disaster."

That the doctrine stated in these decisions is well sustained by authority may be seen by the numerous cases cited therein, and it is not necessary to restate them here.

There is no testimony in the case to show that the deceased gave any visible evidence whether or not he was aware of the approach of the train until his companion warned him after the locomotive had nearly reached him, and he made the futile attempt to escape; and if the danger signals had been sounded by the operatives in charge, they would have had the right to presume that he would step off the track and get out of the way. But, without having given any of the customary warnings of danger by sounding the whistle or ringing the bell, they had no right, unless deceased gave some evidence that he was aware of the approach of the train, to presume that he had heard the ordinary noises of the moving train, and would get off the track in due time to avoid the injury. This is especially true when the train was being run at an unusually high rate of speed, in a populous locality, and near the railroad station where it was customary to stop the train or reduce the speed, and where deceased,

if he heard the noise behind him, doubtless expected it to be stopped, or the speed greatly reduced. Appellant is not liable in this case because its servants did not stop the train, or because they ran the locomotive at an unusually high rate of speed; but it is liable because of the fact that under those circumstances, seeing the deceased on the track ahead of the swiftly approaching train, and giving no evidence that he was aware of its approach, they negligently failed to give him any warnings of the peril. Using the language employed in *Georgia Pacific Ry. Co.* v. *Lee,* 92 Ala. 270: "Such failure, with such knowledge of the situation, and the probable consequences of the omission to act upon the dictates of prudence and diligence, to the end of neutralizing plaintiff's fault and averting disaster, notwithstanding his lack of care, * * * is that recklessness or wantonness, or worse, which implies a willingness to inflict the impending injury, or a willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate wrong."

Judge Thompson says: "The most obvious suggestion of prudence and social duty requires that the engineer who is driving the train shall give warning signals to a trespasser whom he sees on the track in front of the train with his back to it, in sufficient time to enable him, after hearing the signals, to quit the track in safety; and this is so, although the trespasser suddenly and unnecessarily assumes a place in dangerous proximity to the track." 2 Thomp. on Neg. § 1741; *Railway Co.* v. *Smith,* 62 Tex. 254; *Houston & T. C. R. Co.* v. *Harris,* 54 S. W. 629; *L. & N. Rd.* v. *Coleman,* 86 Ky. 556; 2 Rorer on Railroads, p. 1027; *B. & O. R. R. Co.* v. *Schroeder,* 69 Md. 551.

The instructions of the court properly set before the jury for their guidance these principles of the law, and we think the testimony was sufficient to sustain their findings thereon.

Affirmed.