141 N.W.2d 150 (1966)
Eileen K. MIKKELSON and Richard A. Mikkelson, by his guardian ad litem, Eileen K. Mikkelson, Plaintiffs and Respondents,
v.
Frank RISOVI and Mike Kurtz, aka Michael Kurtz, a partnership, Defendants and Appellants.
No. 8202.
Supreme Court of North Dakota.
March 16, 1966.
*151 Thompson & Rutten, Devils Lake, for plaintiffs and respondents.
Duffy & Haugland, Devils Lake, for defendants and appellants.
*152 HAMILTON E. ENGLERT, District Judge.
This appeal involves an action for personal injuries sustained by Richard A. Mikkelson, a minor, brought in said minor's behalf by his mother, as guardian ad litem, and also on her own behalf for medical expenses incurred, against Frank Risovi and Mike Kurtz, a construction partnership. The injuries resulted from a fall while climbing on and jumping from scaffolding erected in connection with the construction of a new home by the defendants. The case was tried to a jury. At the close of plaintiffs' evidence, and again at the close of all of the evidence, the trial court denied motions by the defendants for a directed verdict. The jury returned a verdict in favor of Richard in the amount of $2,000 and in favor of his mother in the sum of $2,335. The defendants moved for judgment in their favor notwithstanding the verdict, which motion was denied. They have appealed from the order denying the motion for judgment notwithstanding the verdict.
The relevant facts, many of which are not in dispute, may be stated as follows: On the 26th day of July, 1963, Richard A. Mikkelson, 12 years and 10 months of age, was playing with two younger boys on a construction site for a home which was being built in the city of Devils Lake by Risovi & Kurtz Construction Company. The boys were climbing to the top of the metal scaffolding, which was alongside the house which was under construction, and jumped from the scaffolding to a pile of insulated boards which were piled about four feet from the scaffold. The top of the scaffold was approximately 15 feet off the ground. While Richard was on top of the scaffold, he caught his pant leg on a protrusion extending from a corner of the top of the scaffold, used as a connection for additional sections of scaffold, and fell to the ground. He landed on a solid block of tar which was lying at the base of the scaffold, receiving injuries which required considerable medical attention.
The only question for the appellate court on an appeal from an order denying a motion for judgment notwithstanding the verdict is whether the motion for directed verdict should have been granted, had the court not been prohibited from granting the same because of Rule 50(a), N.D.R.Civ. P.
A motion for judgment notwithstanding the verdict in effect calls for a review of the trial court's ruling in denying the motion for a directed verdict and thus brings before the trial court for a second time questions raised by the motion for a directed verdict. On appeal from such order only the grounds assigned on the motion for a directed verdict will be considered. Hanson v. Fledderman, N.D., 111 N.W. 2d 401; Odegaard v. Investors Oil, Inc., N. D., 118 N.W.2d 362.
This being a negligence case, the burden of proof is upon the plaintiffs to establish negligence on the part of the defendants against whom they seek to recover. The case is founded upon the theory that the defendants owed a legal duty to the plaintiffs, which they failed without lawful excuse to perform, and that, because of such failure, the plaintiffs suffered injury for which the defendants should respond in damages. There can, of course, be no actionable negligence unless there be a failure to perform a legal duty owing the person injured. O'Leary v. Brooks Elevator Co., 7 N.D. 554, 75 N.W. 919, 41 L.R.A. 677; Belt v. City of Grand Forks, N.D., 68 N.W. 2d 114; Avron v. Plummer, N.D., 132 N.W. 2d 198.
The plaintiff Richard Mikkelson was injured while a trespasser upon a scaffold erected adjacent to a house which the defendants were constructing. The incident occurred in the evening after the defendants and their employees had left the construction site. The action was tried upon what is usually called the attractive-nuisance doctrine. The attractive-nuisance doctrine or, as it is sometimes called, the turntable doctrine, *153 is a subject upon which there has been a great amount of confusion and a wide diversity of opinion. Much conflict exists in the decisions of the courts. See 38 Am. Jur., Negligence, Sections 142-157, and 65 C.J.S. Negligence §§ 29(1)-(15). The question has not previously been settled in this State.
In the early decision of O'Leary v. Brooks Elevator Co., supra, which was an action for damages for personal injury caused by the alleged negligence of the defendant to a boy 11 years of age while upon the property of the defendant, the court held that a directed verdict in favor of the defendant was proper, although the plaintiff was a child and as such was subject to the instincts and inclinations of children and that the evidence tended to show that the place where he was injured was attractive to children; nevertheless, it clearly appeared that the plaintiff was not in fact attracted to the spot and was not induced to go there by reason of his childish instincts and inclinations and that, consequently, the principle of the turntable cases did not apply. The boy was in the company of his uncle and guardian and, under direction of the uncle, the boy had taken him on the defendant's premises for a smoke. The boy was injured when endeavoring to retrieve his uncle's cane, at his direction, and was caught and injured by some machinery in motion. The court refused to adopt or reject the principle of the turntable cases but merely held that it was not applicable to persons who went upon the premises solely for their own convenience and to serve their own ends and purposes.
In Ruehl v. Lidgerwood Rural Telephone Co., 23 N.D. 6, 135 N.W. 793, L.R.A.1918C, 1063, this court reversed a verdict directed in favor of the defendant and held that a jury could infer negligence where the evidence disclosed the defendant telephone company left unguarded a telephone pole hole 4½ feet in depth and 20 inches square in a farm yard when it was shown that the defendant's servant, who dug the hole, knew that children were playing in the area. It was a suit for wrongful death because a child 3½ years of age fell into the hole head first and was either drowned or smothered in the mud at the bottom of the hole. The case makes no mention of the attractive-nuisance doctrine or the turntable cases but held the jury could infer negligence from the leaving of the post holes unprotected and, therefore, it was a question for the jury and not one for the court.
In Dubs v. Northern Pacific Railway Co., 50 N.D. 163, 195 N.W. 157, this court refused to relax the rule established in previous cases that a possessor owes no duty to a trespasser until his presence in a place of danger becomes known, and that thereafter the measure of its duty is the exercise of ordinary care to avoid injuring him because it was established by the child's testimony that he knew and understood that one remaining upon railroad tracks was in a place of danger and might be injured by passing trains. That case involved a nine-year old boy who was run over and seriously injured through the loss of an arm and a leg while sleeping on the railroad tracks of the defendant.
It appears that the so-called attractive-nuisance doctrine or, as it is sometimes called, the turntable doctrine, has not been adopted in this State in any previous decision, nor has it been rejected. Thus this case is one of first impression in this jurisdiction.
What has been said in previous cases in this State, insofar as the attractive-nuisance doctrine has been considered, is in no way contrary to five principles set forth in Section 339, Second Edition, Restatement of the Law, Torts, which states as follows:
A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

*154 (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
Although it is not controlling, it is of interest to note that the trial court in this case instructed the jury on the four conditions referred to in Section 339 of the First Edition, Restatement of the Law, Torts, and also included in its instruction the requirement that to find for the plaintiffs they must find that the defendants did not exercise ordinary care. This portion of the instructions was not objected to by the plaintiffs, although the court furnished counsel with a copy of the instructions before they were given and asked that exceptions be taken.
We accept the principle as stated in Section 339, Second Edition, Restatement of the Law, as the rule applicable in this case.
Having determined the law applicable, the first question for decision is whether the evidence, viewed in the light most favorable to the plaintiffs and resolving conflicts against the defendants, is sufficient to support the burden of proof on the part of the plaintiffs to make it a jury question.
Questions of negligence and proximate cause are ordinarily for the jury to decide. They become questions of law only when reasonable men can draw but one conclusion therefrom. Vogel v. Bertsch, N. D., 130 N.W.2d 220.
The following excerpts of testimony of the plaintiff Richard A. Mikkelson are very definite and material in establishing the facts on which to base a determination as to whether or not there was such negligence on the part of the defendants:
Q. Did you children do something with that scaffolding that night?
A. We played on it and jumped off of it.
Q. Did you jump from the top of the scaffolding to the ground?
A. No, we jumped from the top to the insulation board.
* * * * * *
Q. Do you think that the boards were piled about half as high as the scaffolding?
A. Yes.
Q. Do you have any idea how far away from the scaffolding the boards were piled?
A. About four or five feet.
Q. To the west of the scaffolding?
A. Yes.
Q. Were you children playing some kind of a game there that night?
A. Yes.
Q. Do you remember whether you called it "Follow the Leader" or something like that?
A. Something like that.
Q. One person would climb the scaffolding and jump and then the other would?
A. Yes.

*155 Q. Do you have any idea how many times you jumped from the scaffolding to the pile of the wallboard?
A. About ten or fifteen times.
Q. Did the other children playing there jump a couple or three times, too?
A. Yes.
Q. Will you explain to the jury just how you got to the top of the scaffolding and where you were when you jumped?
A. You mean the last time when I fell?
Q. Well, yes.
A. I would climb up here. (Indicating on Ex. 1).
Q. You are pointing to the ladder effect on the scaffold?
A. And then I would get off to the side here and jump down.
Q. You would get around to what would have been the west side of the scaffolding when it was next to the Traynor home?
A. Yes.
Q. And jump from that to the pile of boards?
A. Yes.
Q. Did you ever go any higher? You indicated the top of the second section of the scaffolding. Did you ever go any higher than that?
A. Yes.
Q. How much higher?
A. I went to about here and then I went to the top.
Q. How many times did you jump from the top of the scaffolding?
A. About three times.
Q. When you would get on top where would you stand?
A. Right on the side here.
Q. You are referring to near the end of the scaffolding?
A. Yes.
Q. And this last time when you jumped did something cause you to fall?
A. No.
Q. Did you fall?
A. Yes.
Q. What caused you to fall?
A. I jumped and my pant leg got caught on this thing here and I went down.
Q. Do you know what caused your pant leg to get caught on the protrusion?
A. No.
* * * * * *
Q. So the only thing located on top of the scaffolding were those planks?
A. Yes.
Q. While you were playing on top of the scaffolding did you notice this protrusion sticking out from these planks?
A. Yes.
Q. Is this what your pant leg hooked on?
A. Yes.
On cross examination, the following questions and answers were elicited:
Q. Well, Richard, you saw another boy get hurt there, the Cozette boy?
A. Yes. [This testimony concerned a prior accident at same construction site.]
Q. And you saw him fall and you went down to help him?
A. Yes.
Q. So you knew, didn't you, Richard, that people could get hurt if they played around the premises?
[Objections omitted]
A. Well, yes.

*156 Q. You knew that could happen? You could fall and get hurt?
A. Well, I didn't know I was going to fall.
Q. But you saw others get hurt there?
A. Yes.
Q. And you continued to play there even though your mother told you not to, isn't that correct?
A. Yes.
Q. And even though workmen had chased you away from the premises, isn't that correct?
A. Yes.
Aside from any reference to acts of contributory negligence, this testimony definitely shows that this 12 year and 10 month old boy was injured by a fall while preparing to make another jump from this metal scaffold. The testimony is that his trouser leg became caught or entangled on the four or five inch protrusion, used for adding more sections to increase the height of the scaffold. This protrusion was described as being a solid, stationary metal part which was necessary for the adding of additional sections to the scaffold. It was not proven defective in any manner. There was some testimony introduced to indicate that the boards on the top of the scaffold were not fixed and that they were loose and movable, but this condition was not shown to have in any way contributed to the accident or fall.
Would it be correct for the court to hold that a scaffold, such as involved in this case, would be considered one which the possessor would realize as involving an unreasonable risk of death or serious harm to a child? It is the opinion of this court that from the evidence and facts in the case, this question  whether the second and fourth clauses of Section 339 of the Restatement of Law, Torts, Second Edition, apply so as to entitle the plaintiff to a recovery  becomes a legal question for determination by the court.
In considering the correctness of the trial judge's order on the motion for judgment notwithstanding the verdict, the following paragraphs of defendants' motion for directed verdict are pertinent:
4. That the injury to the plaintiff Richard A. Mikkelson does not appear to be one which the defendants, in the light of attending circumstances might, in the exercise of ordinary prudence, have foreseen as probable to occur as a result of leaving unguarded a stationary scaffolding up against the west wall of the building.
5. It does not appear that the accident was the natural or probable consequence of the stationary scaffolding or of leaving the stationary scaffolding unguarded.
To support their contentions, the plaintiffs rely principally on Helguera v. Cirone, 178 Cal.App.2d 232, 3 Cal.Rptr. 64 (1960). In that case the California Court reversed an order of the lower court sustaining a general demurrer to an amended complaint. They held that the amended complaint, alleging that the scaffolding was placed in close proximity to an overhang protruding from the front of the building, that the platform of the scaffold at the juncture with the overhang was defective and loose, that there was no guardrail along the scaffold, that under the juncture of the scaffold and the overhang there were open holes and excavations littered with rubbish and debris which were an invitation to minor children of the neighborhood who entered and played thereon, that the premises were dangerous to children playing thereon was known or should have been known to the defendant but not to a seven-year old plaintiff and that the usefulness of maintaining the scaffold was slight as compared with the risk involved, stated a cause of action under the "attractive-nuisance" doctrine and also under the "concealed-trap" theory. However, the court quotes from a previous case (Woods v. City and County of San Francisco, 148 *157 Cal.App.2d 958, 307 P.2d 698) with approval. It states, in part:
* * * Rather, each case must be judged in the light of its own peculiar facts according to the four conditions laid down by section 339 of the Restatement of Torts.
In the instant case there is no concealed-trap theory involved and a block of tar on the ground cannot be considered as being rubbish and debris in any manner. Further, there was no proof that any defective condition was the proximate cause of the accident and resulting injury.
The plaintiffs also cite Chase v. Luce, 239 Minn. 364, 58 N.W.2d 565, wherein the Minnesota Court found liability, but in that case the court found there was evidence showing that the door to the house could have been latched, the stairway barricaded, or the floor covering altered, and that failure to take these precautions would be negligible in comparison with the risk involved. This was sufficient to warrant the jury in finding that these conditions involved an unreasonable risk of injury to a child of seven years of age.
In the Mikkelson case before this court, the fall was not through any opening of the floor of the house being constructed. The boy fell while jumping from the top of the scaffold with a full appreciation of the obvious risk of a fall from a type of construction similar to playground equipment. The extension corner posts were a necessary part of the scaffold.
A recent decision in Wisconsin, Schilz v. Walter Kassuba, Inc., 27 Wis.2d 390, 134 N.W.2d 453, covers the application of the attractive-nuisance doctrine in the State of Wisconsin. In this case considerable research was done and there are extensive citations and references with regard to falls of children based upon application of this doctrine. Many cases are cited involving artificial conditions which were inherently dangerous to children and an unreasonable risk of serious bodily injury or death to them. In that case the court said:
* * * It appears generally to be the rule that a child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger presented or exaggerated by a defect in the structure or other peculiar circumstance, which is hidden from the child or which a child would fail to appreciate because of his immaturity.
In Lopez v. Capitol Company, 141 Cal. App.2d 60, 296 P.2d 63, the California Court held that a scaffold erected at one of the busiest intersections in a downtown area did not constitute an attractive nuisance, even if the city ordinance was violated by failing to have the scaffolding protected by closed doorways, and that there could be no recovery for injury to a trespassing child who climbed the scaffold and fell.
In the above California case, the Lopez child was injured in a fall of 10 to 12 feet from a scaffolding consisting of tubular pipes in perpendicular position with horizontal crossbars of pipe which closely resembled the "monkey bars" or climbing devices found in public playgrounds for children.
In the instant case this same type of scaffold construction was used, at the top of which extended solid metal extensions of four or five inches on each corner for the attaching of another section of scaffold to increase the height. It was upon one of these protrusions on the corner of the scaffold that the plaintiff Mikkelson caught his trouser leg, causing him to trip and fall downward.
In the case of Lopez v. Capitol Company, supra, the court stated:
* * * Beyond question, the minor plaintiff when climbing this scaffold knew that there was a risk of falling if he was not careful, knew that if he slipped *158 he would fall, and knew that if he fell he might hurt himself. He was injured by a danger, the risk of falling, of which he was conscious when he started to climb.
In the case of Hocking v. Duluth, Missabe & Iron Range Railway Co., 263 Minn. 483, 117 N.W.2d 304, which was an action to recover for injuries sustained by a 10½ year old boy who fell while climbing in a trestle, the court said:
It seems to be well established in the law that liability does not attach to an owner or occupant for an injury to a trespassing child who climbs upon or jumps or falls from a nondefective and stationary structure, at least where the structure is useful and properly located.
Another case which supports defendants' contention is Crawford v. Cox Planing Mill & Lumber Co., 238 Ark. 588, 383 S.W. 2d 291. In this case the court, in affirming an order sustaining a demurrer to the complaint, held that allegations that the scaffold was narrow and unstable and moved in manner unforeseeable by children stated no cause of action under the attractive-nuisance doctrine as the scaffold embodied no perils not readily apparent to children capable of responding to their natural climbing instincts. The court said:
* * * Perils or dangers, such as exist from climbing, are obviously known to children who are old enough to be unattended and capable of venturesome conduct.
In Lopez v. Capitol Company, supra, the court held that in some cases it may properly be held, as a matter of law, that the attractive-nuisance doctrine is not applicable and that the facts are not sufficient to warrant leaving the decision of that question to a jury. The court stated:
* * * The applicability of the doctrine involves the elements of lure to children, the foreseeability of their playing on property where an unreasonable risk of harm exists, and the presence of a concealed or unknown danger. It involves whether the defendant should have anticipated that an injury would be apt to result from his failure to do something which the circumstances reasonably required, as distinguished from something that resulted only from the child's own activity.
These important questions must be decided by this court: Were the defendants negligent in leaving a metal scaffold of the type used in this house-building project unfenced and unguarded? And, further, should they be required, at the end of each day's work, to dismantle such scaffolding in order to avoid being charged with negligence? From a review of the evidence in the case, and as a matter of law, this court is of the opinion that these two questions must be answered in the negative. A scaffold which is not defective is considered to be an essential and necessary part of the construction work and is no more dangerous than uncompleted portions of the house being built. A child could injure himself as well by a fall from or in jumping over a dismantled section of the scaffolding upon the existence of certain conditions. To require the fencing or guarding of every house under construction, or the taking down of scaffolding at the end of each day, would impose an unreasonable expense and hardship upon the builder.
A possessor of land is not under a duty to prevent every possibility of harm but only to exercise due care as to those risks which he should realize are unreasonably great and threaten serious bodily harm in a way unlikely to be appreciated by children whose trespass he could foresee. The duty under the law is to maintain the premises so as not to create an inherently dangerous condition.
We are of the opinion that the evidence does not sustain the verdict in that we must conclude that the condition, as shown by the evidence to exist, was not, *159 as a matter of law, one which the possessor would know or should know would involve an unreasonable risk of death or serious harm to children. Therefore, the proof required in regard to clause (b) of Section 339 of Restatement of the Law, Torts, Second Edition, has not been met so as to entitle plaintiffs to recover damages for injuries sustained in said fall.
The order denying defendants' motion for judgment notwithstanding the verdict is reversed and the case is remanded to the district court for entry of judgment in favor of the defendants.
BURKE, C.J., and TEIGEN and STRUTZ, JJ., concur.
ERICKSTAD, J., deeming himself disqualified, did not sit; Honorable HAMILTON E. ENGLERT, Judge of the First Judicial District, sitting in his stead.
KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.