## Cyrus E. Hull v. Albert Sherrod, by His Next Friend.

1. LANDLORD AND TENANT—*Landlord's Liability for Injuries Inflicted upon Strangers While the Tenant is in Possession.*—Where a landlord is under no obligation to make repairs upon demised premises, not having reserved the right to make or control the making of repairs, changes or improvements upon the premises, his liability to third persons in respect to subsequently accruing conditions of improvements upon the premises is suspended as soon as his tenant's occupation commences and he will not thereafter be liable for injuries resulting from such changes or improvements made by his tenant.

Trespass on the Case, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.

Hull v. Sherrod.

Heard in this court at the February term, 1901. Reversed. Opinion filed September 4, 1901.

F. C. SMITH and M. MILLARD, attorneys for appellant.

ALEX. FLANNIGEN and B. H. CANBY, attorneys for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the City Court of East St. Louis, by appellee against appellant to recover for a personal injury. Trial by jury. Verdict and judgment in favor of appellee for $2,000.

The undisputed facts of this case are, that appellant owned a lot in the city of East St. Louis at the corner of St. Louis and Third streets, on which stood a two-story building. About two years before the time of the injury complained of he had leased these premises to a Mrs. Campbell, at a rental of $20 per month, she to make any improvements she wanted and keep the premises in repair. Along the property on the Third street side was a " cinder " sidewalk, and at least a part of that side of the lot was inclosed by a fence. At the time Mrs. Campbell took possession under her lease there was a " single " gate in this fence, but she desiring to take her horse and buggy in and out through that opening, reconstructed it, making it a " double " gate, so hung as to open outward, and when opened, the sections stood across the " cinder " sidewalk. Appellant was not consulted with reference to this change in the construction of the gate and had no knowledge of it at the time it was made nor for months afterward, but he did know of it before the time of the injury. The premises were entirely under control of the tenant, Mrs. Campbell, and were used by her for keeping roomers and boarders. Albert Sherrod, the beneficiary appellee, was a boy about nine years old and resided with his father and mother in those premises as roomers or sub-tenants under Mrs. Campbell. The gate was kept closed and locked, and was never used except when driving vehicles in or out. On the day the injury occurred

Mrs. Campbell and her husband had driven out through the gate and caused it to be shut and locked after them, and on their return they found it as they had left it, shut and locked.   In the meantime, however, the injury to the boy, for which this suit is brought, did in some manner occur. The injury resulted in the loss of sight of one eye. .

The evidence as to how it occurred and what caused it is conflicting and directly contradictory.   A number of witnesses testified that the gate was open across the walk and that the boy, beneficiary appellee, ran against it and hurt his eye.  'Others testify that the gate was not open, and that the boy was running and fell against the fence.   The jury found for appellee, and we must assume the facts to be that the gate was open and that the boy ran against it. There is no evidence tending to show who opened the gate or how it became opened, nor how long it remained open, but it is not contended that appellant opened it or had anything to do with opening it; he was in San Francisco at the time and had been for five or six months.

At the time the gate was reconstructed by Mrs. Campbell and during all the time that elapsed thereafter, the premises were in her sole possession and control; appellant, the landlord, was under no duty to make repairs, had not reserved the right to make or control the making of any repairs, changes or improvements, and did not make or control the making of any such, or attempt to do so.   In such cases the law is that the landlord's liability to third parties in respect to subsequently accruing conditions of the improvements on the premises is suspended as soon as the tenant's occupation commences.   Taylor's Landlord and Tenant, 8th edition, section 175, and cases cited.

" The analogy is direct to the rule which holds the owner of real estate free from liability for injuries caused by a contractor to build upon the .premises.   In each case the control is parted with."

Appellee's counsel contend that the " terms of the tenancy expired with the end of each month, that each succeeding month was a new letting," and that in that way

appellant had re-let the premises to Mrs. Campbell after the gate was reconstructed. We can not agree to the proposition that the tenancy in this case so terminated at the end of each month as to amount to a surrender of possession and control, and a new leasing and new possession for each succeeding month. The tenancy might have been terminated by either party upon giving the other thirty days previous notice, but this was not done. There was not a day from the time the contract was made that it was not in full force, nor a day from the time that Mrs. Campbell entered into possession that she did not have exclusive possession and control of the whole premises under that contract. By the letting to Mrs. Campbell and her entrance into possession, appellant was divested of possession and control, and he was not at any subsequent date re-invested, nor did he in any manner at any time resume control or assume the right to do so. What the effect would have been upon the case if he had regained and re-let the premises after the gate was changed, it is needless to discuss, as it also is to discuss the many other interesting questions raised. This record discloses no case against appellant. The judgment of the City Court of East St. Louis is reversed.