Walter Brazowski, Jr., by Walter Brazowski, His Next Friend, Appellee, v. Chicago Title and Trust Company, Appellant.

Gen. No. 37,592.

Heard in the second division of this court for the first district at the October term, 1934. Opinion filed May 24, 1935.

GEORGE GILLETTE, EDMUND J. REYNOLDS and CASSELS, POTTER & BENTLEY, all of Chicago, for appellant; RALPH F. POTTER, LESLIE H. VOGEL and E. DOUGLAS SCHWANTES, all of Chicago, of counsel.

JAMES J. TRAINOR and HAROLD T. HALFPENNY, both of Chicago, for appellee; JAMES E. McGRATH, FRANK A. McCARTHY and RICHARD F. HAHN, all of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

Plaintiff brought an action of tort in the circuit court to recover damages for personal injuries sustained by him. Trial was had by jury, resulting in a verdict and judgment for $4,500, from which defendant prosecutes this appeal.

The essential facts disclose that July 15, 1929, plaintiff, then 3½ years old, was sitting on the cement foundation located on property known as 1612 S. Prairie avenue, in Chicago, leaning against an iron fence, about four feet high, constructed in front of said premises, running parallel with the public sidewalk. In an effort to arise to a standing position he leaned back against the fence and it fell upon him, causing a fracture of the left femur which ultimately resulted in a slight shortening of his leg. The property was owned by C. Oscar Carlson, Fred S. Kahn, Emanuel Friend and Alexander Friend. In November, 1922, they executed a declaration of trust designating the Chicago Title & Trust Company, as trustee, under a form of trust known as "F-99," which provided in effect that the trust company was about to take title to the property in question and to hold the same for the ultimate use and benefit of the individuals named therein, as beneficiaries, according to their respective interests as set forth in the instrument, and the trustee was to receive for its services nominal compensation for accepting the trust and taking title. The trust indenture contains the following material provisions:

"It is Agreed and Understood between the parties hereto, (Declarant and Beneficiaries) and by any person or persons who may become entitled to any interest under this Trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and the

right to receive the proceeds from rentals or from sales of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, but only an interest in the proceeds as aforesaid; it being the intention of this instrument to vest the full legal and equitable title to said premises in said trustee. . . . It shall not be the duty of the purchaser of any part of said premises to see to the application of the purchase money paid therefor; nor shall anyone who may deal with said trustee be privileged or required to inquire into the necessity or expediency of any act of said trustee, or of the provisions of this instrument . . . while the Chicago Title & Trust Company is the sole owner of the real estate referred to herein, and, so far as the public is concerned has full power to deal with it.''

''The beneficiary or beneficiaries hereunder shall have the management and control of said property, and of the selling, renting, and handling thereof, and any beneficiary or his agent, shall handle the rents thereof and the proceeds of any sales of said property and said trustee shall not be called upon to do anything in the management or control of said property, payment of taxes, assessments, insurance, litigation or otherwise, except on the written direction of the beneficiaries hereunder, and after payment to it of all money necessary to carry out said instructions.''

For several years after the declaration of said trust, defendant made leases and collected the rents for the premises, but March 1, 1927, it delivered the balance

then on hand to Alex Friend & Company, Inc., and thereafter the latter made leases, collected the rents and made such repairs as were required. The property was improved with an old residence which had been occupied by one Mildred M. Gordon since 1927. On February 18, 1929, Mrs. Gordon executed a new lease for said residence with Alex Friend & Company, Inc., Agents, wherein the demised premises were described as "the three-story brick building located at sixteen hundred and twelve (1612) Prairie Avenue (but not including the two-story and brick barn at rear of said premises) to be occupied for private residence . . . from the 1st day of May, A. D. 1929 until the 30th day of April, A. D. 1931." The lease provided that the tenant had examined and knew the condition of the premises, and had received the same in good order and repair, and would so keep the same; that the lessor should not be obliged to incur any expense whatever for repairing any improvements upon said demised premises or connected therewith, and that the lessee at her own expense would keep all improvements in good repair and would, so far as possible, keep the same from falling temporarily out of repair. In April, 1929, after the execution of the lease, but before its term commenced, and while Mrs. Gordon, the tenant, occupied the premises, that section of the fence which fell in July, 1929, when the accident occurred, was knocked down by boys in the presence of the tenant, who drove them away and wired the section back in place. Mrs. Gordon also had the fence painted. The record discloses that a barn was situated upon the rear of the premises, but evidence is lacking to show whether it was occupied or how access was had thereto. A photograph in evidence discloses an iron fence in front of the demised premises, erected in three sections, with two open spaces for access to the premises, one immediately in front of the stairway

leading to the front entrance of the residence, and the other leading to a cement walk along the side of the house. A small portion of the barn is visible in the rear, but the fence evidently did not extend along the side of the property back to the barn.

Defendant insists that the trustee is not liable because it had neither the right to use, nor the actual possession and control of the premises upon which the injury occurred in July, 1929. The declaration charged that defendant then had possession of the property, and to support this allegation plaintiff seeks, by a construction of the trust deed, to show that the trustee was in possession and that it was actually managing the property through Alex Friend & Company, Inc., as its agent. With reference to these contentions it is urged that certain portions of the two paragraphs of the trust instrument hereinbefore quoted are ambiguous and inconsistent; that the first paragraph excludes the beneficiaries from any right or power to control or manage the property, vests the trustee with full legal and equitable title as owner, so far as the public is concerned, and provides that the only interest of the beneficiaries is their right to share in the income and direct a sale of the fee; that the later paragraph is inconsistent with the former, in that it vests the beneficiaries with the management and control of the property and the selling, renting and handling thereof; and that, unless the later provision can be reconciled with the former, it must as a matter of law be declared void and of no effect. Thus, by seeking to eliminate the later paragraph on the ground of inconsistency and repugnancy, plaintiff would have the court hold that only the former remains, and then to construe the remaining provisions in such manner as to constitute the beneficiaries as agents for the trustee to manage and control the property and "to appoint other agents" for the same purpose. We think the trust agreement, as shown by the analysis thereof

made by defendant, is not subject to any such construction, and for the following reasons:

It is obvious, of course, that the settlors, and not the trustee, created the trust, and therefore any rights or powers given or reserved over the *res,* either to the trustee or to the beneficiaries, emanated from and were created by the settlors, who were free to mold it according to their desires within legal limitations. (*Equitable Trust Co. v. Fisher,* 106 Ill. 189, 195; *Irish v. Antioch College,* 126 Ill. 474, 482.)

In pursuance of their rights, the beneficiaries vested the trustee in its fiduciary capacity with the sale, ownership of, and the legal and equitable title to, the real estate in question, to be held "for the ultimate use and benefit of the" beneficiaries. Then they provided that the trustee be required, on the written direction of the beneficiaries, "to make deeds for, or otherwise deal with, the title to real estate," but exempted it from entering into "any personal obligation or liability in dealing with said land," and from performing certain specific functions, by providing that it "shall not be called upon to do anything in the management or control of said property, payment of taxes, assessments, insurance, litigation or otherwise, except on the written direction of the beneficiaries . . . and after the payment to it of all moneys necessary to carry out said instructions."

The beneficiaries, on the other hand, while given no "right, title or interest in or to any portion of the real estate, as such," reserved to themselves the proceeds and avails of said property and the right to direct the trustee "to make deeds for, or otherwise deal with the title," provided "the trustee shall not be required to enter into any personal obligation or liability," and the beneficiaries are by said trust indenture declared to be entitled to and expressly given "the management and control of said property and of the selling, renting and handling thereof."

Thus, the rights and interest in the property, as well as the powers conferred both upon the trustee and the beneficiaries, and those reserved to them respectively, are all derived from the same source, and no distinction can fairly be made between any one of the rights possessed by the beneficiaries and any of the other rights reserved to them, as a basis for the claim that, in the exercise of the one, they are acting in their own right and not as agents for the trustee, while, in the exercise of the other, they are acting under delegated authority from the trustee. Therefore, it cannot fairly be urged that the beneficiaries' right to direct the trustee to make deeds, receive rents and the proceeds from sales of the property, were derived from the trustee, and that in exercising them they are merely the agents of the trustee. These rights and powers were created by the settlors under the terms of the trust indenture, and that being true as to certain rights and powers therein conferred, it must be true as to all rights, including the management, control and handling of the property and the sale and rental thereof in their own right, and not as agents of the trustee, but as principals. Stated more concisely, there are two donees of powers, both created by the donors: (1) The trustee, in respect to the powers to be exercised by it, which it holds *in trust;* and (2), the beneficiaries, in respect to powers to be exercised by them which they hold not in trust, but *in their own right* and for their exclusive benefit.

It is therefore apparent that there was no intention to vest in the trustee the power of management and control, except in favor of persons dealing with the trustee, and nothing appears in the agreement upon which to base the claim of a contractual relationship of principal and agent as between the trustee and the beneficiaries. Any such construction would make the beneficiaries subject to the direction and control of the

trustee, and instead of exercising their own judgment as they clearly have the right to do, as creators of the trust and by its terms, their acts relating to the management and control of the property would at all times be subject to the direction of their principal, the trustee. Manifestly, no such interpretation can be given to the language employed and the intent of the trust agreement as therein expressed.

The provision in the trust deed that the trustee is "the sole owner of the real estate referred to . . . and, so far as the public is concerned, has full power to deal with it," is clearly designed for the protection of persons acquiring rights in the property by dealing with the trustee, and it is not here contended that plaintiff ever had any dealing whatsoever with the trustee.

The form of trust created is a convenient method of taking title under tenancies in common, to avoid complications that may arise through the death or disability of one or more of the cotenants and by reason of dower interests. While it is intended that the powers of the trustee should be as broad as possible, in order to permit the free handling of the title and to afford the maximum protection to persons dealing with the trustee, the settlors have, nevertheless, by the terms of the trust, prescribed and limited the right of the trustee to exercise those powers, and in respect to the power to manage and control the property and the selling, handling and renting thereof, have expressly conferred such powers upon the beneficiaries themselves. Therefore, to say that the powers so conferred upon the beneficiaries in their own right, and which they are privileged to exercise free from control or interference on the part of the trustee, are mere delegated powers from the trustee, is to place an interpretation upon the instrument which is contrary to reason and not supported by any authority cited. Such

interpretation would create a relationship between the parties contrary to their expressed intention, and would lead to serious results, never contemplated by them.

In *Gallagher & Speck v. Chicago Title & Trust Co.,* 238 Ill. App. 39, the same form of trust indenture was considered and construed by the court. A judgment had been rendered against Chicago Title & Trust Company for work and labor done, and materials furnished, in installing a steam heating plant in the premises, title of record to which stood in the name of defendant, as trustee, and the work was done under a contract consisting of a written proposal made by plaintiff to E. J. Kelley and an acceptance thereof by him. Plaintiff had dealt only with Kelley, and not with the trustee. In the course of its opinion, the court carefully analyzed the rights, liabilities and duties of the trustee and beneficiary under the form of trust indenture employed, and quoted from portions of the provisions of the trust agreement which are identical with those in the instant case. The contention was there likewise made that the relation of principal and agent was created by the terms of the trust between the trustee and Kelley, but the court refused to place such construction on the trust agreement, and said that if it were possible to construe any relationship of principal and agent from the language used in the document, Kelley would be the principal and the trustee the agent, instead of the reverse as claimed by plaintiff. It was further urged that by the terms of the agreement Kelley was in writing appointed the authorized representative or manager of defendant. The court referred to this as a ''misconception,'' and said that the agreement provided that the beneficiary should have the management and control of the property and of the selling, renting and handling thereof, but that it did not say that the beneficiary should man-

age and control the property and collect the rents "for the defendant, or as its agent, and there is nothing in the language of the trust agreement which can be so construed," and that Kelley's authority to manage and control the property and collect and retain the rents and proceeds of the same was not derived from any appointment by defendant, but that such "rents, avails and proceeds" were his own property, reserved to him in and by the terms of the deed to defendant as well as in the trust agreement executed at the time.

Another case precisely in point is *Whittaker v. Central Trust Co.*, 270 Ill. App. 614 (Abst.), where the same form of trust agreement was under consideration. This was an action for personal injuries, brought by plaintiff against Central Trust Company, trustee, charged with the "management, control, selling, renting and handling" of the property upon which plaintiff was injured. After quoting from that portion of the trust agreement which provides that the management and control of the property shall remain with the beneficiaries, and that the trustee shall not be called upon to do anything in that connection, the court concluded as follows:

"We find nothing in the record to indicate that the defendant, Central Trust Company of Illinois, had the possession of, or the right of the possession to, or any control over, the property in question, from which it can be held that a duty was impressed upon the Central Trust Company of Illinois with regard to the matter upon which the charge of negligence herein is based."

Other jurisdictions have upheld the validity of similar instruments vesting title to real estate in one person and the right to possession in another. In *Eisenbrey v. Pennsylvania Co.*, 141 Pa. St. 566, the title to the real estate was in the Pennsylvania Co. as trustee, and the right of possession in Sarah R. Bull. There

was a door in a fence which, when opened, encroached on the public sidewalk. The door was suddenly thrown open, injuring plaintiff, who obtained a judgment against the trustee. The Supreme Court of Pennsylvania held that "there are some propositions so self-evident that no strength can be added by elaboration or illustration. That the company, being a mere trustee, not in the occupancy of the property even by a tenant, and exercising no control whatever over it, can be held responsible in damages for this injury, is a proposition the mere statement of which carries with it its own convincing refutation. . . . Were we to sustain the doctrine now contended for by the appellee, it is within the bounds of reason to say that no one could safely act as a trustee in Pennsylvania. Judgment reversed." To the same effect, 1 Perry on Trusts (7th ed.) section 329.

Aside from the construction sought by plaintiff to show possession and control of the property by the trustee, it is urged that Alex Friend & Company, Inc., were actually its agents, and our attention is called to the fact that Chicago Title & Trust Company made leases and collected rents during a portion of the period between 1922 and 1927. The evidence does not show definitely when it commenced to collect rents, but the net income from such rents as were collected during this period were turned over to Alex Friend & Company, Inc. This was evidently done at the direction of the beneficiaries, because H. W. Cooley, an employee of Chicago Title & Trust Company, testified, without contradiction, that Alex Friend & Company, Inc., were never employed by Chicago Title & Trust Company to do anything in connection with this property. We find no evidence that the trustee ever exercised any management or control over the property, other than the signing of leases and the collection of rents during the early period of the trust arrangement, and, of course, it could properly have done these

things under the direction of the beneficiaries, who had the right to change the arrangement whenever it suited their purpose. They evidently exercised that right on March 1, 1927, for on that date the trustee delivered the balance of moneys on hand to Alex Friend & Company, Inc., and thereafter signed no leases and collected no rents. Its activities ceased in 1927, more than two years before the accident. The argument "that the beneficiaries were, by appointment, the agents of the Chicago Title & Trust Co., and that said company had the power to appoint other agents at its discretion, and the evidence shows that it exercised that power, by appointing Alex Friend & Company, Inc., its agent," is not borne out by the evidence, nor by any logical process of reasoning. We therefore conclude that the trustee, at the time of the accident, had neither the right to, nor the actual possession or control of the premises, upon which the injury occurred. It is a fundamental rule that the liability to pay damages for negligence arises out of the existence of a duty and a breach thereof. (*Johanson v. Johnston Printing Co.*, 263 Ill. 236, 239.) The duty in the case at bar would, of necessity, arise out of the fact of possession and control, and can be attributed only to the person who has the possession and control.

Plaintiff also takes the position that the fence in question was used in common by the tenants and that the landlord was therefore in duty bound to maintain it in a state of repair. There is no evidence that there were tenants other than Mildred Gordon, however. The only other improvement on the property, besides the residence, was a garage in the rear, and there is no evidence to show whether it was occupied or how access was had thereto or that the fence was used by any other tenant. Moreover, defendant was not the landlord at the time of the accident, and therefore had no duty to keep the premises in repair. The cases relied upon on this branch of the case, to the effect that

a landlord owes a duty to keep in repair premises used in common by several tenants, have no application to the case at bar, because facts are lacking upon which the proposition can be based.

Finally, it is urged that the fence was in a dangerous and defective condition when the lease to Mildred Gordon was made, constituting a nuisance at the time of the letting, and that the landlord, and not the tenant, thereby became liable for the injury, regardless of the obligation of the tenant under the lease to make repairs. There are several reasons why plaintiff cannot avail himself of this doctrine. The only date mentioned in the declaration is July 15, 1929, the date of the accident. There is no charge that the defective condition arose or existed prior to that date, and upon the authority of *Marcovitz v. Hergenrether,* 302 Ill. 162, "in order to charge owners of leased premises with responsibility for the existence of the alleged defect, . . . it was necessary for plaintiff to allege and prove that the conditions complained of existed at the time of the letting or that the owners had covenanted to repair or to remedy the condition or nuisance complained of." The court laid down the general rule in that case that the lessee or occupant, and not the owner as such, is responsible for injuries received in consequence of a failure to keep the occupied premises in repair, no matter whether the condition complained of is the result of misfeasance, malfeasance or nonfeasance, as charged in the case. As applicable to the particular point, the court said: "The declaration contains but one date, March 4, 1919, and the allegations are that all of the conditions and all the happenings mentioned in the declaration existed and took place on that date and not prior to that date. . . . For the reasons aforesaid the declaration does not charge any legal duty upon the owners to the deceased." Moreover, Mildred Gordon had been in continuous and uninterrupted possession of the premises for upward of

two years prior to July 15, 1929, the date of the accident, and it has been generally held that where the possession of the tenant is continuous and uninterrupted, and it is not shown that the defect existed at the time the tenant went into possession, the landlord will not be liable for defects arising during that occupancy, especially where the tenant is charged with the duty of keeping the premises in repair. (*Strong v. Soodvoisky,* 141 Ill. App. 183; *Hull v. Sherrod,* 97 Ill. App. 298; and *Thomas v. Vannucci,* 185 Ill. App. 414.) There is also the circumstance in this case that prior to the accident the fence had been repaired by Mildred Gordon, evidently in a rather flimsy and improper manner, for which the landlord could not well be held liable.

Defendant urges other ground for reversal, but in the view that we take of the relationship of the parties, as expressed in the trust deed and the evidence relating thereto, we deem it unnecessary to discuss the same. This case was tried, and the appeal taken, under the Civil Practice Act, Cahill's St. ch. 110, ¶¶ 196, 220 (Smith-Hurd Ill. Rev. Stat. (1933) ch. 110, sec. 192, par. 68 (3)b; sec. 216, par. 92) which permits us to dispose of the matter here without further proceedings. We are of the opinion that in view of the evidence and the language of the trust agreement, defendant could not be liable because it did not have possession or control of the premises nor the right to the possession and control thereof at the time of the accident, and that there was no duty shown from which any charge of negligence could be attributed to defendant. The judgment of the circuit court will therefore be reversed without remanding the cause and judgment entered here for defendant.

*Reversed and judgment here for defendant.*
SCANLAN and SULLIVAN, JJ., concur.