Bernard S. Meyer, J.
This is an action for personal injuries suffered by an infant plaintiff, Nicholas Berdieff, and for expenses and loss of services by his mother, Caroline Berdieff. The answer admits that defendants Seymour Argule, Jerome Gutt and Max Kaplan (hereafter referred to as the “ store tenants ”) do business under the firm name of Ben Kaplan Paints. It is stipulated that they were in possession and control of the store, that Ben Kaplan is the owner of the vacant lot contiguous to the store premises, and that defendants Helen Argule, Edna Gutt and Max Kaplan are the owners of the store premises. Considered in the most favorable light for plaintiffs, the evidence adduced on plaintiff’s case showed that Edna Gutt was also the occupant of one of the apartments over the store, that the store fronted on Central Avenue (also known as Beach 20th St.) Far Rockaway, that there had been a rear entrance to the store, but that that rear entrance was blocked by the construction of a shed at the back of the store, that the store premises ran back behind the shed for some three and one-half to four feet, that the lot owned by Ben Kaplan ran through to Beach 19th Street, and for part of that distance was contiguous with property of a church and parochial school, that there was no fence along the Central Avenue frontage of the vacant lot, that children played in the vacant lot, there had been fires in the vacant lot and one of the radio patrolmen in the sector had responded to possibly three or four calls during the 14 months prior to the date (Oct. 8, 1953) on which Nicholas was injured, that when the patrolman responded to such calls, he had seen children playing around fires, but the children would leave before he could reach them, that there had been rubbish, garbage and paint cans on the vacant lot prior to *144 October 8, 1953, and at least two fires on the lot within two years prior to that date, during which paper, rubbish and paint cans were burned, that there were a number of other fires in the lot made either by children or by the burning of rubbish in the lot, that Stephen Gutt, the son of Edna Gutt and the grandson of Ben Kaplan had been burned while playing in the lot with matches, that during the morning of October 8, 1953, Nicholas was invited by Edna Gutt to come over and play with Stephen, that Nicholas was then six years of age and had muscular dystrophy which caused him to walk in a wobbly fashion but that he could walk without crutches or a cane, that when Mrs. Caroline Berdieff (the adult plaintiff) went to look for Nicholas about 2:00 p.m., she found him in front of Kaplan’s store at which time Jerome Gutt said to her “ They’re all right, they play nicely,” that a little before 3:00 p.m., Nicholas was severely burned when his pants leg caught fire while he was attempting to stamp out a fire that had been started by Stephen Gutt with matches which Stephen had obtained from the counter in the store, that there were three or four paint cans smoldering on the edge of the fire, that the fire had been made by Stephen Gutt with some paper, paint cans and wood, and that there were several other paint cans to one side near the shed.
The evidence does not clearly establish whether the fire which injured the infant plaintiff was on the vacant lot or on the four-foot strip behind the store which was part of the store premises, nor does it definitely locate any of the earlier fires on the four-foot strip behind the store. In the view that the court takes of the case, these are not material considerations, however. On the foregoing facts, the motions made by defendants to dismiss at the end of plaintiffs ’ case are granted and the complaint is dismissed as to all defendants. A stay of 30 days is granted, and the time to make a case is extended to 60 days.
The liability of the respective defendants turns on the status of the infant plaintiff as to each. Clearly the invitation to him by Edna Gutt to come and play with her son constituted Nicholas merely a social visitor (Krause v. Alper, 4 N Y 2d 518) as to Edna Gutt as a tenant of the upstairs apartment or as one of the owners of the store premises, and the same is true with respect to the invitation (assuming that the jury would find the words used to constitute an invitation) uttered by Jerome Gutt, considered either as tenant of the store or as tenant of the apartment. Nicholas ’ status would not reach that of an invitee unless he were present in furtherance of a relation which inures to the benefit of the owner or occupant of the property and himself, or of the former alone. (Heskell v. Auburn Light, Heat *145 & Power Co., 209 N. Y. 86, 92; Vaughan v. Transit Development Co., 222 N. Y. 79, 82; see, also, Restatement, Torts, 2d ed., Tentative Draft No. 5, § 332, comment a.)
The law recognizes, however, that a tenant’s presence on the premises is for the benefit of the landlord; for this reason a licensee or social visitor of a tenant is, as to the landlord, aü invitee (Donohue v. Erie County Sav. Bank, 285 N. Y. 24; Bowers v. City Bank Farmers Trust Co., 282 N. Y. 442; Parnell v. Holland Furnace Co., 234 App. Div. 567, affd. 260 N. Y. 604; Petersen v. Crawford, 263 App. Div. 617; Porcelli v. Amodeo, 145 N. Y. S, 2d 761; Restatement, Torts, 2d ed., Tentative Draft No. 5, § 332, comment k). No evidence was introduced concerning a landlord-tenant relationship between the Gutts as occupants of an apartment and the store premises owners, or of such relationship between the store tenants and the store premises owners, but for purposes of the present motion, that relationship may be inferred from the occupancies. However, a tenant’s visitor can become the invitee of the landlord only with respect to those parts of the premises held open by the owners to the tenants and their visitors. A property owner, even' though he retains possession and control of a portion of the premises, may restrict or prohibit the use of the retained portion, and as to such area even a tenant does not have invitee status (Mendelowitz v. Neisner, 258 N. Y. 181). Where occupancy by various tenants is shown, no presumption arises, merely from the fact of ownership, that the owners retained control of any portion of the premises. In the present case there is no direct evidence that the landlords retained possession and control of the four-foot strip behind the store, nor would the fact that one of the store tenants (Max Kaplan) is also one of the store premises owners raise any inference of such retention by the owners. Rather the uncontradicted evidence is that the only entrance from the strip or rear yard to the building had been blocked off by the erection of a shed, which would raise the inference that the yard was not intended for use of the tenants (see Keenan v. Lawyers Mtge. Co., 254 App. Div. 348, 350). In the absence of evidence that the yard was appurtenant to the building, used in common by the tenants and retained in possession and control by the owners, no duty of reasonable care on the part of the owner arises (Murtha v. Ridley, 232 N. Y. 488; Walker v. Bachman, 268 N. Y. 294). Even if the jury were to find that the accident occurred on the four-foot strip, therefore, the evidence does not support any higher duty by the owners of the store premises or by the store tenants to Nicholas than to a licensee.
*146 Nor is Nickolas in any better position with respect to the vacant lot owned by Ben Kaplan. While there was evidence that there had been a fence on the Central Avenue front of the lot which had been cut down because children climbed over it and Mr. Kaplan feared that if the fence was left at its original ■height injury to a child might occur, and the evidence also showed that Mr. Kaplan knew that children played in the lot, those factors cannot be tortured into the affirmative steps that he would have to take to constitute the children who did play on the lot invitees (see Restatement, Torts, 2d ed., Tentative Draft No. 5, § 332, comment cl). Nor, even if the jury found from Mr. Kaplan’s testimony that his daughter Edna Grutt was his agent with respect to the lot, would her invitation constitute Nickolas anything more than a licensee, there being no benefit inuring to Mr. Kaplan from Nicholas.’ presence on the lot. It follows that whether the injury occurred in the store premises, rear yard or the vacant lot, Nickolas was at best a licensee, and with respect to the vacant lot might more logically be considered a trespasser.
Does the evidence show violation of any duty due a licensee? The duty of defendants to the infant was to exercise reasonable care to disclose dangerous defects known to defendants and not likely to be discovered by plaintiff (Krause v. Alper, 4 N Y 2d 518, supra). There is no evidence in the record of any affirmative act by any of the defendants. The most that can be charged to any of them is that they permitted rubbish, paper, wood and paint cans to accumulate on their property. Plaintiffs argue from this that the case falls within the rule of Mayer v. Temple Props. (307 N. Y. 559), that the bringing about of an inherently hazardous situation in disregard of the safety of human life imposes liability even to a trespasser if the consequences could have been anticipated. They rely heavily on the designation by the Court of Appeals in that case of “highly inflammable material ’ ’ as perilous and a deceptive trap to the unwary, and on Mr. Justice Beckinella’s decision in Carradine v. City of New York (N. Y. L. J., May 24, 1960, p. 15, col. 3). While the Carradine case involved paint cans, there was evidence of benzine or turpentine in liquid form on the floor of the room in which the cans were, and the fire was started by the dropping of a lighted match into the liquid whereupon “All of a sudden everything just went up in flames.” That ease is clearly distinguishable from the present in which the only showing is that there were paint cans in the fire, which Nickolas testified was made by gathering together paper, wood and paint cans lying around and lighting them. Assuming that a *147 jury might, notwithstanding evidence that it was Nicholas’ act in attempting to stamp out the fire that ignited his pants, find for plaintiffs on the question of proximate cause, the court concludes that paint cans are not inherently dangerous or “highly inflammable material ’ ’ within the meaning of Mayer v. Temple Props. (supra). This is not to say that paint is not flammable; the court will take judicial'notice of the fact that it is combustible. But not every flammable material is inherently dangerous within the meaning of the rule now under discussion. Thus Morse v. Buffalo Tank Corp. (280 N. Y. 110) held uncovered gasoline not inherently dangerous; Beickert v. G. M. Laboratories (242 N. Y. 168) held pieces of motion picture film not inherently dangerous and noted (p. 172) that they 1 ‘ only became so when they were ignited ”; and Hall v. New York Tel. Co. (214 N. Y. 49, 52) held that alcohol “ was not of necessity dangerous.” Without in any way questioning Mr. Justice Beckiuella’s conclusion that benzine which suddenly went up in flames is an inherently dangerous material, and without intending to indicate that there are no circumstances under which paint cans improperly stored may become dangerous, the court concludes that no liability of defendants can be predicated on the presence of paint cans on their property. The evidence that there were numerous previous fires on the property avails plaintiffs nothing for Zaia v. Lalex Realty Corp. (261 App. Div. 843, affd. 287 N. Y. 689) and Stinnett v. Liberty Aircraft Prods. Corp. (273 App. Div. 909) make clear that the creation of a fire is not such an act as will create liability to an infant licensee, and, it appears, even under the attractive nuisance doctrine fire is not recognized as a danger, in the absence of some other factor creating a special risk (Restatement, Torts, 2d ed., Tentative Draft No. 5, § 339, comment j).
What has been said with respect to the danger involved also disposes of plaintiff’s contention that by allowing paint cans, paper, wood and other rubbish to be present on their property, defendants created a nuisance under sections 564 — 15.0 and 564-17.0 of the Administrative Code of City of New York and are liable to plaintiffs because of their failure to abate it. Runkel v. City of New York (282 App. Div. 173) on which plaintiffs rely, involved a building in imminent danger of collapse and is clearly distinguishable from the present case which involved neither danger to life nor detriment to health.
For the foregoing reasons," the Clerk is directed to enter judgment dismissing the complaint.