Rodney AVRON, an Infant, by Ethyl Avron, his Guardian ad Litem, and Clarence Avron and Ethyl Avron, Individually, Plaintiffs and Respondents,

v.

Harriet D. PLUMMER, Defendant and Appellant,

and

Filipi Castoreno and Mary Ann Castoreno, Defendants.

No. 8112.

Supreme Court of North Dakota.

.Dec. 4, 1964.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiffs and respondents.

Letnes, Hansen & Murray, Grand Forks, for defendant and appellant, Harriet D. Plummer.

MORRIS, Chief Justice.

This is an action to recover damages for personal injuries received by Rodney Avron by being burned in an outdoor fire on premises rented and occupied by the defendants, Filipi Castoreno and Mary Ann Castoreno, and for the expenses of Clarence Avron and Ethyl Avron, father and mother of Rodney, for medical treatment and hospitalization of their son. The injury occurred on May 23, 1961, at which time Rodney was seven years of age. At the time of the injury the premises were owned by Harriet D. Plummer. The land on which the injury occurred is located in the state of Minnesota, in rural territory, about four or five blocks from the city limits of East Grand Forks. The property occupied by the Castorenos is bounded on the west by a tract of land on which the Avrons lived about 13 years, and which lies between the Plummer property and the Red River. The Avron house is located five or six blocks from the River, and the distance between the Avron and the Castoreno houses is 212 feet. Rodney was burned in a fire surrounding a tree stump which was about four feet high. It was 48 feet from the door of the Castoreno house on the Plummer property, about 15 or 20 feet from the Avron property line.

The Castorenos became tenants of the Plummer property in the fall of 1957. It was then owned by L. A. Plummer and Harriet D. Plummer, his wife, as joint tenants. Mr. Plummer died in October 1960, and the property has since been owned by Mrs. Plummer who testified that it was occupied under a month to month tenancy at will.

Rodney Avron was severely burned. The jury returned a substantial verdict against the three defendants. Mrs. Plummer alone moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied the motion both as to judgment notwithstanding the verdict and for a new trial. Harriet D. Plummer appeals from the judgment and from the trial court's order denying her motion in the alternative. The first question, therefore, to be considered is whether as a matter of law the evidence is insufficient to warrant the jury in rendering a verdict against Harriet D. Plummer.

■ In reviewing the sufficiency of the evidence upon appeal from the order denying the motion for judgment notwithstanding the verdict, we view the evidence in the light most favorable to the verdict and resolve conflicts of testimony against the appellant. Lund v. Knoff, N.D., 85 N.W.2d 676, 67 A.L.R.2d 1110; Bauer v. Kruger, N.D., 114 N.W.2d 553; Anderson v. Stokkeland, N.D., 125 N.W.2d 665.

With respect to the liability of the appellant, the complaint alleges that Clarence Avron and Ethyl Avron, as parents of Rodney and other young children, complained to the defendant, and to her husband when living, about fires frequently built by the Castorenos and left unattended, and told and warned the Plummers about the risks and dangers to young children,

"* * * and asked and requested them that they remedy, abate and prevent the same and not permit or allow such conditions to exist, continue and be maintained on their said property, but that the said L. A. Plummer and the defendant Harriet D. Plummer, negligently failed to remedy, abate or prevent such conditions and permitted and allowed the same to exist, continue and be maintained on their said property, failed, refused and neglected to terminate the said lease or evict said tenants, and on the contrary permitted them to remain on and use and occupy said property and renewed said lease from month to month thereafter, all with

notice and knowledge of said fires and other dangerous conditions and nuisances existing, continuing and being maintained thereon and of the continued negligent use of said property by said tenants, as aforesaid."

Rodney Avron testified that when he came home from school his father, sister and brother were working in the garden which was about a block back of the house. His mother was in the house. He went over to the Castorenos' yard. The stump was on fire. There was a coffee can with some liquid in it setting on a low brick wall which surrounded a planter at the front of the Castoreno house. He poured the liquid on the fire to put it out. He thought the liquid was water but it proved to be gasoline. The fire flared up and he was badly burned. He screamed and ran. His father came running, threw him down and put the fire out. The Castorenos were standing in their doorway when he was throwing the liquid on the stump.

Rodney's mother testified that during the time the Castorenos lived next door she called Mrs. Plummer some forty to forty-five times and complained about the Castorenos starting fires on the property and leaving the fires unattended. She also called Mrs. Plummer several times about the Castorenos leaving gasoline setting around. The first time was in 1959. That gasoline was in a red can with a spout. The last time she called was in April 1961. Then she had seen gasoline in coffee cans setting alongside the house. It appears that an older son, Clifford, was burned on May 7, 1959, at a fire around the same stump. He was running and stumbled, getting hot ashes in his boots which burned his leg. Mrs. Avron says that after Clifford was burned she asked Mrs. Plummer to tell the tenants to quit building fires and leaving hazards around or get different renters. She estimated that she asked Mrs. Plummer ten or fifteen times to have the Castorenos move off the property. A fire had been built around the stump a number of times. She warned her children to stay away from the burning stump. She also consulted the sheriff of the local county, who advised her to get the landlady to put the Castorenos off.

The injury which is the basis of this suit occurred in the state of Minnesota. The law of Minnesota is therefore applicable to the determination of liability of the appellant and that law governs the determination of the sufficiency of the evidence.

Section 339, Restatement of the Law, Torts, deals with artificial conditions highly dangerous to trespassing children, and states:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved thereon."

The courts of Minnesota have adopted the above rule in connection with the determination of the liability of the possessor of land for injuries to trespassing young children. Doren v. Northwestern Baptist Hospital Ass'n, 240 Minn. 181, 60 N.W.2d 361, 42 A.L.R.2d 921; Smith v. Otto Hen-

drickson Post 212, American Legion, 241 Minn. 46, 62 N.W.2d 354; Davies v. Land O'Lakes Racing Ass'n, 244 Minn. 248, 69 N.W.2d 642; Johnson v. Clement F. Sculley Construction Co., 255 Minn. 41, 95 N.W.2d 409.

■ In Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N.W.2d 382, 154 A.L.R. 1325, it was said:

"This court no longer recognizes a distinction between 'attractive nuisance' cases and other negligence cases, but does recognize the diligence required when attractive or alluring instrumentalities are placed where children are known habitually to play."

The decision in that case was re-examined and approved in Knox v. City of Granite Falls, 245 Minn. 11, 72 N.W.2d 67, 53 A.L.R.2d 1091, which held that the question of defendant's negligence was properly submitted to the jury and that the plaintiff, a seven year old girl who was severely burned by a kerosene flare set out by the City as a warning device, was not guilty of contributory negligence as a matter of law.

■ This being a negligence case, the burden of proof is upon the plaintiff to establish negligence on the part of any defendant against whom he seeks to recover. If the defendant is the possessor of land upon which he maintains an artificial condition which results in injury to young children trespassing thereon, plaintiff has met the burden of proof when he establishes the four conditions set forth in Restatement of the Law, Torts, Section 339, which we have quoted. Gimmestad v. Rose Brothers Co., 194 Minn. 531, 261 N.W. 194; Johnson v. Clement F. Sculley Construction Co., supra. It appears that the plaintiff in this case has produced evidence sufficient to sustain the verdict against the non-appealing Castorenos in that on the premises which they possessed as tenants they permitted a smoldering fire to burn around a tree stump in their yard 48 feet from the door of the house in which they lived and were present and at the same time permitted near the door on a low brick wall an open coffee can containing gasoline and well-knowing that their open, unfenced yard was frequented by neighboring children one of whom had been previously burned in a fire around the same stump.

The issue on this appeal is whether the evidence also supports the jury's verdict against the defendant Plummer who is owner and landlord. The Castorenos occupied the premises under a month to month tenancy at will.

Section 504.06, Minnesota Statutes Annotated, provides that:

"Estates at will may be determined by either party by three months' notice in writing for that purpose given to the other party, and, when the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it be equal to the interval between the times of payment; and, in all cases of neglect or refusal to pay the rent due on a lease at will, 14 days' notice in writing to quit, given by the landlord to the tenant, is sufficient to determine the lease."

■ In Anderson v. Ries, 222 Minn. 408, 24 N.W.2d 717, 167 A.L.R. 1033, it is said:

"* * * that a tenancy at will does not expire by mere efflux of time and can be terminated only by act of the parties or by notice given pursuant to § 504.06. Johnson v. Theo. Hamm Brewing Co., 213 Minn. 12, 4 N.W.2d 778; Oesterreicher v. Robertson, 187 Minn. 497, 245 N.W. 825, 86 A.L.R. 1344; Hunter v. Frost, 47 Minn. 1, 49 N.W. 327."

From the foregoing authorities we draw the conclusion that at the time of plaintiff's injury the Castorenos were in possession of the premises on which the injury occurred under a lease that had not been terminated. The plaintiffs and respondents argue that in view of the numerous com-

plaints that the Avrons made to Mrs. Plummer regarding the conditions maintained on the premises by the Castorenos, particularly with reference to numerous fires, and the fact that the record showed that the Castorenos were in default in the payment of the rent at the time of and for some time prior to the injury which gave Mrs. Plummer the right to terminate the lease upon 14 days' notice, that Mrs. Plummer was negligent in permitting her tenants to remain in possession which gives rise to liability on her part for the injuries to Rodney Avron. If the evidence fails to establish such negligence on the part of the respondent, she is entitled to a judgment notwithstanding the verdict. If on the other hand the evidence is sufficient to warrant the verdict rendered by the jury, the trial court properly denied that motion for judgment notwithstanding the verdict.

Some general legal principles may be stated with respect to the liability of a landlord to a third person for injuries caused by the negligence of a tenant.

■ Where premises are occupied by a tenant no presumption arises from the mere fact of ownership that the owner retained control. Berdieff v. Argule, 26 Misc.2d 142, 209 N.Y.S.2d 154.

Prosser on Torts, Section 80, p. 465, states:

"In general a lessor of land is not subject to liability during the term of the lease for harm caused to the lessee, or to others upon the land or outside of it, by the condition of the premises or the activities of the lessee."

This statement is followed by five exceptions, none of which is applicable in this case.

■ In 32 Am.Jur., Landlord and Tenant, Section 669, we find that:

"A landlord is not deemed to be the principal of his tenant, and he is not responsible for his torts, active or neg-

ligent, or for his tenant's failure to keep the premises in repair. The landlord is not liable for injuries, to a person on the premises in the right of the tenant, caused by a defect in the premises which results from an act of the tenant."

In Weber v. St. Anthony Falls Water Power Co., 214 Minn. 1, 7 N.W.2d 339, the action involved the liability of the possessor of land for injury to an eight year old trespasser. It was there held that the question of liability of the possessor of the land was for the jury under the applicable principles of law which were stated to be:

"(1) the possessor knows or should know that the place is one where children are likely to trespass; (2) a condition maintained upon the premises involves an unreasonable risk of harm to such children; (3) the particular child injured by such condition did not understand and appreciate the risk incident thereto; and (4) the utility to the possessor of maintaining the condition is slight as compared with the risk of harm to children."

In applying these rules to the evidence in this case, it appears that the jury could have found that in view of the fact that the tenants, the Castorenos, knew that children frequented the premises which were unfenced, the tenants were negligent in two respects which were concurring proximate causes of the injury. They were: (1) to permit the unguarded stump fire to burn or smolder near the property line between the premises which they occupied and those of the Avrons; (2) to permit an open coffee can containing gasoline to remain on the planter wall unattended some 50 feet from the fire.

The ultimate and controlling question on this appeal is whether Mrs. Plummer was negligent in failing to oust the Castorenos from their tenancy and occupation of the premises in view of their shabby habits of maintenance and their propensity to have

open fires burning on property under their control. The respondents cite with emphasis the case of Moretti v. C. S. Realty Co., 78 R.I. 341, 82 A.2d 608, 39 A.L.R.2d 963. This case has points of similarity to the case at bar and also points of difference. In that case, which sustains recovery from a landlord for injuries suffered by the plaintiff by being struck in the face by the broken blade of an electric fan which had been propelled from an unguarded opening in the wall of the landlord's building while she was passing on the sidewalk, the portion of the building in which the fan was located was leased to a tenant on a month to month basis. The cause of action was stated in two counts, one in nuisance, and the other in negligence. Most of the opinion is devoted to a discussion of the nuisance count, and after a summation of the evidence, the court said:

"From the above evidence the jury could reasonably have found that such fan situated as it was in the opening in the wall just above the traveled way was a *public nuisance*. The expulsion of its blade into the highway was a natural and probable result of its age and poor condition and of the lack of safeguards on the opening into Hayden street to keep in from flying off into that street. An electrically operated ventilator fan, especially one in a partially worn-out and defective condition, in an unguarded opening in the wall of a building abutting on a public highway may well be deemed a menace to the safety of persons traveling thereon. As such it would be a *public nuisance* and if a traveler were injured thereby he would have a good cause of action against one who was responsible for maintaining his premises in a condition so hazardous to persons lawfully traveling on the highway." (Emphasis supplied.)

The court then pointed out that the public has the right to unobstructed use of the highway free of unnecessary hazards, and that it is the duty of owners and occupiers of abutting property to use it so as not to endanger the public.

In the case at bar no public nuisance is involved, although the respondents contend that the burning of refuse and other material by the Castorenos in open fires did constitute a nuisance in that such fires were dangerous to children.

In connection with its discussion of the landlord's liability for injury resulting from the public nuisance in the Moretti case, the court states:

"True if he elects to regain possession of his property our statute requires him to give notice, General Laws 1938, chapter 453, § 4, but in the case of a month to month tenancy this can scarcely be said to be a serious barrier to the landlord exercising the power to abate a nuisance on his property if his tenant will not abate it himself or permit it to be abated by his landlord."

The court further pointed out that the defendant did not lease the entire building or part with the entire possession and control thereof. There was a second floor which the ground floor tenant did not rent and the stairway and the door to the sidewalk were used in common by the tenants, and it was said:

"Nor can the exterior walls of the building reasonably be said to have been in the control of the tenant although in the absence of express provision to the contrary he would have the right to use them in their existing condition in connection with his tenancy. * * * This, however, would not imply that he or his subtenants had the right to make openings in the wall without the landlord's consent.

"Those facts taken in connection with the fact that the tenant's possession of the premises, however much it included, was based upon a mere letting from

month to month are, in our opinion, sufficient to show that he did not have exclusive control of the wall wherein the alleged nuisance was maintained if indeed he had any measure of control over it at all without the cooperation of the landlord, express or implied."

Thus the court reached the conclusion that the fan was a public nuisance over which the landlord had at least a modicum of control which was sufficient to support liability on his part.

The court disposed of the negligence count by this brief statement:

"And it is also our opinion that under the count in negligence there was evidence from which the jury could have reasonably found that the defendant owed a duty to the plaintiff as a traveler on the highway to keep the exterior wall of its premises in such condition that she would not be injured by any unprotected opening made therein for the purpose of a revolving fan and that it had not exercised reasonable care in the performance of such duty."

Because of the differences in the facts between the case at bar and the Moretti case, we do not regard it as persuasive authority.

While precise authority is not available on the question of the negligence of the landlord, Mrs. Plummer, there are cases which have an important bearing on the solution. In Hull v. Sherrod, 97 Ill.App. 298, a boy was injured because of a gate that had been reconstructed by a tenant under a lease from month to month. It was contended that each month constituted a new letting which gave the landlord control and made him liable for the injury caused by the reconstructed gate. The court said:

"We can not agree to the proposition that the tenancy in this case so terminated at the end of each month as to amount to a surrender of possession and control, and a new leasing and new

possession for each succeeding month. The tenancy might have been terminated by either party upon giving the other thirty days previous notice, but this was not done. There was not a day from the time the contract was made that it was not in full force, nor a day from the time that Mrs. Campbell entered into possession that she did not have exclusive possession and control of the whole premises under that contract."

In Ward v. Hinkleman, 37 Wash. 375, 79 P. 956, damages were sought against the owners of property for injuries caused to the plaintiff by falling through an approach to a porch between the sidewalk and a residence that was rented to a tenant from month to month. A statute declared that where premises are rented for an indefinite time with monthly rent reserved, the tenancy should be construed as one from month to month but that it should continue until terminated by notice. It was held that the tenancy was a continuing one during which the tenant had exclusive possession and control of the premises and that the landlord had committed no wrong since it was not shown that the defect which caused the injury existed at the time of letting.

Britton v. Donwin Realty Corporation, 123 N.J.L. 540, 10 A.2d 262, involved a suit for damages resulting from a fall by a pedestrian due to a hole in a sidewalk. In holding that the landlord of the adjacent premises was not liable the court said:

"The fact that the letting was from month to month and not for a period of years makes no difference. The fact is that the condition came into existence after the tenant went into possession, and if it was the result of ordinary wear there was no liability on either tenant or landlord; if the result of work performed on behalf of the tenant, then the landlord cannot be held."

Cassidy v. Welsh, 319 Mass. 615, 67 N. E.2d 226, embraces two actions brought by

minors to recover from a landlord for personal injuries which they claim were the result of the defendant's negligence in allowing an oil gas tank on the premises to explode and for maintaining a nuisance on the premises by reason of which the injuries were sustained. One of the contentions was that the landlord had legal control of the premises at the time of the accident because the tenant was in arrears in rent and under the terms of the lease the landlord had a legal right to take possession for nonpayment of rent and therefore at the time of the accident was in legal control of the premises. On this point we quote from the opinion, omitting citations:

"We do not concur in that reasoning. The right reserved to the defendant to take possession of the property for the nonpayment of rent was a condition and not a conditional limitation. * * While the lease could have been terminated by the defendant at his election for nonpayment of rent, unless he entered while the default continued the lease remained in force. * * * There is nothing in the record to warrant a finding that the defendant entered the premises for the purpose of terminating the lease in question, or that he gave any notice in writing to quit * * *."

In Johnson v. Kurn, 8 Cir., 95 F.2d 629, it was held that a landlord's right to terminate a lease on 30 days' notice did not render him liable for the death of a child from a defect that did not exist when the lease was executed but had existed with knowledge of the landlord for a long period of time prior to the fatality. The hazardous defect consisted of a structure erected by the tenant.

We would now call attention to the Minnesota case of Johnson v. Theo. Hamm Brewing Co., 213 Minn. 12, 4 N.W.2d 778, which involved the right of a nine year old girl to recover from the owner of a building for injuries received when a bar or counter situated in the building previously used by the tenant Meidl fell upon her as she was climbing on it. Meidl had been occupying the building under an oral lease without any agreement as to the length of term and paying rent on the first day of each month. It was held that he was a tenant from month to month and unless notice was waived, neither the landlord nor tenant could terminate the lease except by one month's notice directed to the end of the month. On July 31, 1940, Meidl sent a letter to the landlord stating "my new building will be completed by about the 10th or 15th of September and * * * I then will vacate your building here and move into my own." At that time the counter which was owned by Meidl was fastened to the floor of the building with brackets and screws. At the time of the accident on September 21, 1940, the fastenings had been removed, presumably by a carpenter employed by the tenant who then had the key to the building which still contained other property of the tenant. On the morning of the day of injury several boys and girls had gained entrance to the building and were playing in it. The plaintiff child and a playmate saw the other children and joined them in the building. Shortly thereafter the counter fell on her and injured her. The court pointed out that neither the tenant nor the landlord served a notice to quit upon the other and that if the letter sent by Meidl to his landlord be construed as sufficient to constitute a notice of his intention to quit the premises, it was not effective to terminate the tenancy before the end of September. The court applied what it stated to be the general rule:

" * * * that where a lease is silent with respect to the duty of making repairs the lessor is not subject to liability for bodily harm caused to persons upon the leased premises by any dangerous condition which comes into existence after the lessee has taken possession."

In considering the contention that the vacant building was under the circumstances an attractive nuisance, the court said:

"Without entering into a discussion of the application to the facts before us of the attractive nuisance doctrine, the condition of the building which, under this theory, would make it an attractive nuisance, was caused, not by any act of defendant, but rather by acts and omissions of Meidl at a time when he was in possession of the building. Consequently no liability could attach to defendant."

An order of the trial court granting a directed verdict for the landlord was affirmed.

In the case before us the property itself was not a nuisance nor was there danger to anyone inherent in its use by a tenant. The plaintiff contends that the evidence is sufficient to warrant the jury in finding that Mrs. Plummer was negligent in failing to terminate the lease and dispossess the Castorenos because of their conduct on the premises, particularly with reference to the unguarded sporadic fires and cans of gasoline. They cite Johnson v. Clement F. Sculley Construction Co., 255 Minn. 41, 95 N.W.2d 409, which does not involve a landlord and tenant relationship.

■ To be actionable, negligence for failure to act in this respect must have amounted to a breach of legal duty and have been a proximate cause of the injury. The fires were not within the limits of any municipality, and it is not contended that they were in violation of law.

"Actionable negligence is failure to discharge a legal duty to the one injured, and, lacking duty, there can be no negligence." Woodring v. Pastoret, 221 Minn. 50, 21 N.W.2d 97.

■ Section 355, Restatement of the Law, Torts, 1948 Supplement, says:

"Except as stated in Sections 357 and 360 to 362 [which sections have no application to this case], a lessor of land is not subject to liability for bodily harm caused to his lessee or others upon the land with the consent of the lessee or sublessee by any dangerous condition which comes into existence after the lessee has taken possession."

As we have pointed out, the doctrine of "attractive nuisance" is no longer applicable in Minnesota. Young children entering upon land under the facts shown by the evidence, not being subject to the rule applicable to trespassers, must be considered as being upon the land under circumstances which imposed upon the lessees the duty to keep the land free from artificial conditions which involved unreasonable risks to them. Restatement of the Law, Torts, Sec. 339, Comment *e*; Doren v. Northwestern Baptist Hospital Ass'n, 240 Minn. 181, 60 N.W.2d 361, 42 A.L.R. 2d 921; Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 86 A.2d 777. This however, does not make the landlord insurer of their safety or the supervisor of the conduct of the tenant having control of the premises.

■ It is our conclusion that, where a young child is injured while trespassing on land leased to and under the exclusive control of a tenant in circumstances which will subject the tenant to liability for injury to the child for failure to keep the land free from artificial conditions created by the tenant which involve unreasonable risks to children but are not in violation of law or the terms of the lease and do not constitute a public nuisance, the landlord may not be held liable for the injury although he may have been cognizant of the conditions and had the right to terminate the lease on grounds unconnected with the injury, such as default in the payment of rent.

The conditions that resulted in injury to Rodney were created by the tenants during their possession and while the lease was in full force and effect. Mrs. Plummer was under no legal obligation to terminate the tenancy and oust the tenants from possession. Her failure to do so did not constitute actionable negligence on her part and, as a matter of law, the evidence is insufficient to sustain the verdict against her. The denial of her motion for judgment notwithstanding the verdict was error.

The judgment and order appealed from are reversed as to the appellant, Harriet D. Plummer.

TEIGEN, ERICKSTAD, BURKE, and STRUTZ, JJ., concur.